971 So.2d 1206 (2007)
Mark and Nzinga TALBERT
v.
STATE FARM FIRE AND CASUALTY INSURANCE COMPANY.
No. 2007-CA-0211.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2007.
*1207 Craig R. Nelson, Nelson Fay, LLC, New Orleans, LA, for Plaintiffs/Appellants.
Robert H. Cooper, Robert H. Cooper, Attorney at Law, Mandeville, LA, for Defendant/Appellee.
*1208 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
This is an insurance coverage dispute. The parties are State Farm Fire and Casualty Insurance Company ("State Farm") and Mark and Nzinga Talbert ("the Talberts"). The issue presented is whether State Farm properly denied the Talberts' claim for an allegedly stolen automobile based on material misrepresentations in obtaining coverage. From a judgment in favor of State Farm dismissing their claim, the Talberts appeal. For the reasons set forth below, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
On June 16, 2003, Mrs. Talbert's unemployed brother, Merle Offray, donated to Mr. Talbert a 2003 GMC Yukon Denali bearing Vehicle Identification Number ("VIN") 1GKEK63U13J287031. According to Mrs. Talbert, the donation was memorialized in an "Act of Donation of a Movable," which was executed at Mid-City Auto Title in New Orleans before Don Fern, Mid-City's owner and a notary. In connection with the donation, Mr. Offray and Mr. Talbert jointly presented to Mr. Fern two documents: 1) a "Bill of Sale" dated June 2, 2003, which was notarized by an Ohio notary; and 2) an "Ohio Certificate of Title" for the vehicle. The documents represented that Mr. Offray purchased the vehicle from James Mayo on June 2, 2003, for the sum of $28,000.00. From these documents, Mr. Fern prepared the donation and completed the necessary forms allowing Mr. Talbert to be issued a Louisiana certificate of title and registration for the vehicle. Mr. Offray then paid $2,719.00 in cash for the sales taxes and registration fees to Mr. Fern.[1]
Immediately after leaving Mid-City's office, Mr. Talbert and Mr. Offray went to the State Farm agency at which the Talberts had insured other vehicles. At the agency, Mr. Talbert presented the documents that he obtained from Mid-City, including the act of donation. Mr. Talbert also presented a 2003 white GMC Yukon Denali that he claimed to be the vehicle described in the documents. At that time, pictures were taken of the vehicle, which show it had a temporary Georgia license plate. Based on Mr. Talberts' representation that he was the sole owner of the vehicle, State Farm added the Yukon Denali to the Talberts' policy. Thereafter, the Talberts paid the insurance premium on the vehicle for the next year.
On June 5, 2004, the Talberts reported to the police and to the On-Star Service that the vehicle was stolen from their home in the Florida Housing Project in New Orleans. The On-Star service located a Yukon Denali with VIN 1GKEK63U13J287031 in Florida. However, the vehicle that On-Star located belonged to Ann Treadwell, a Georgia resident, and was pewter in color, not white. The record reflects that Ms. Treadwell purchased the vehicle new from a Georgia dealership, which acquired it directly from the GMC factory.
The Talberts made a claim with State Farm for the value of the vehicle. State Farm provided the Talberts with a rental car and proceeded to investigate the claim. On November 3, 2004, the Talberts filed suit against State Farm, seeking to recover the following: 1) proceeds allegedly due them under their policy for the theft of the *1209 vehicle; 2) damages, including rental costs and premiums paid after the date of the theft; and 3) statutory penalties for bad faith refusal to pay the claim as well as attorney's fees under La. R.S. 22:658 and 22:1220.
On August 12, 2005, State Farm informed the Talberts by letter of its denial of their claim. State Farm also terminated the rental coverage that was provided during the investigation of the claim.[2]
On October 13, 2006, the trial court denied the Talberts' motion to strike or prohibit State Farm from introducing any evidence or argument that the title or insurance obtained on the Yukon Denali was "fraudulent," "obtained through fraud," or was in any way flawed. Rejecting the Talberts' assertion that such evidence was irrelevant and prejudicial, the trial court reasoned that "State Farm's investigation of the claim required it to conduct a title search history of the vehicle. The title search led to the discovery of problems with the title, proof of insurance, and impropriety with the VIN number. State Farm should be allowed to set forth a defense as to its failure to pay plaintiffs' claim."
On November 14, 2006, a jury trial commenced in this matter. Mr. and Mrs. Talbert both testified. The gist of their testimony was that although Mr. Offray was unemployed, they did not question how he could afford the vehicle because they trusted him. Insofar as Mr. Offray's whereabouts, they indicated that he had lived with his mother in New Orleans. They further indicated that they were unaware of where he was currently living.
Neither of the Talberts offered any explanation for the discrepancies regarding Mr. Offray's Ohio title, his proof of insurance, or the VIN. More specifically, Mrs. Talbert could not explain why her brother, who never lived in Georgia, would have obtained insurance for the Yukon Denali from a Georgia insurance agency. Nor could she explain why the vehicle, which was transferred by a bill of sale that was notarized by an Ohio notary, and which had an Ohio title, would have a Georgia temporary license plate.
The Talberts presented the deposition testimony of Valencia Thomas. Ms. Thomas testified that she was employed by the State Farm agency at which the Talberts purchased the insurance. Ms. Thomas stated that when Mr. Talbert came into the agency to add the Yukon Denali to his existing policy she was training a new employee. Ms. Thomas testified that she and the new employee used the information on the documents Mr. Talbert provided them to complete the application. Although she indicated that they obtained the VIN from those documents, she testified that they are required to physically check the VIN on the vehicle, and that she actually did so. She further testified that they took pictures of the vehicle. She described the vehicle as a white Yukon Denali. Given the documents provided by Mr. Talbert, including the act of donation, Ms. Thomas stated that she was satisfied that he was the owner of the vehicle.
The Talberts also presented the testimony of Richard Rushton, who was qualified as an expert in the field of automobile appraisal. Mr. Rushton opined that the value of the Yukon Denali in June of 2004, when the vehicle was stolen, was $37,300.00.
At the close of the Talberts' case, the trial court granted State Farm's motion for directed verdict on the issue of statutory penalties and attorney's fees. As a result, the trial court found that the Talberts' *1210 claim did not meet the $50,000.00 jury trial threshold. Thus, the jury was released.
On November 15, 2006, the trial court heard State Farm's evidence regarding the Talberts' remaining claim as to the value of the vehicle. State Farm presented Ms. Treadwell as a witness. She testified that on August 4, 2003, she purchased a Yukon Denali bearing the VIN indicated on the Talberts' policy from a dealership in Decatur, Georgia for $43,804.15. She also presented her vehicle for inspection at trial. The trial court examined the vehicle and determined that the VIN on that vehicle matched the VIN on Ms. Treadwell's Georgia title. The trial court also determined that the keys that the Talberts provided to State Farm for their vehicle did not turn on the ignition of Ms. Treadwell's vehicle.
State Farm also introduced at trial the deposition testimony of Yvette Worthington, the president of the Georgia dealership from which Ms. Treadwell purchased her vehicle. Ms. Worthington identified the certificate of origin, which established that the 2003 Yukon Denali with VIN 1GKEK63U13J287031 was shipped from the GMC factory to the dealership on April 28, 2003. She also corroborated Ms. Treadwell's testimony that she purchased the vehicle from the dealership on August 4, 2003.
At trial, State Farm presented evidence establishing the questionable nature of the documentation that Mr. Talbert and Mr. Offray presented to Mr. Fearn at Mid-City in order to obtain the act of donation and the Louisiana registration documents.
First, State Farm presented the deposition of Mr. Mayo, a retired bishop of the AME Church who, according to the bill of sale and Ohio title, sold the Yukon Denali to Mr. Offray. Mr. Mayo denied ever owning a Yukon Denali. Mr. Mayo also denied knowing Mr. Offray. Furthermore, Mr. Mayo testified that it was not his signature on either the bill of sale or the Ohio title.
Second, State Farm presented the deposition testimony of Patrick Lightfoot, the Assistant Chief of Investigations for the Ohio Bureau of Motor Vehicles. Mr. Lightfoot testified that he accessed the Bureau's automated title processing system and determined that there was no record of the State of Ohio ever issuing a title in the number referenced on the Ohio certificate of title. He also testified that there was no record of the State of Ohio ever issuing a title for VIN 1GKEK63U13J287031. Mr. Lightfoot further testified that there were a number of discrepancies on the Ohio title that he had not seen on regularly issued Ohio titles.
Third, State Farm presented the deposition testimony of Allison Thompson, the regional operations manager for Southern General Insurance Company. Ms. Thompson was asked about Southern General's alleged coverage for Mr. Offray on the Yukon Denali from June 10, 2003 to December 10, 2003. More particularly, she was asked about a Georgia Liability Insurance Card that Advantage Insurance Agency allegedly issued to Mr. Offray reflecting such coverage. Ms. Thompson testified that this card did not resemble the proof of insurance cards that Southern General issues. She further testified that she researched Southern General's database and determined that no policy of insurance was written for Mr. Offray or a vehicle with VIN 1GKEK63U13J287031.
Finally, State Farm presented the deposition testimony of Mr. Offray's (and Mrs. Talbert's) mother, Mary Offray. Mrs. Offray testified that she had not had contact with Mr. Offray since he turned eighteen years old, which was several years before *1211 the donation was made. Although Mrs. Offray lived close by the Talberts from the time of the donation to the time of the alleged theft, she testified that she was neither shown the Yukon Denali nor told about the donation.[3]
On December 11, 2006, the trial court rendered judgment in favor of State Farm, dismissing the Talberts' claim with prejudice at their cost. In its reasons for judgment, the trial court stated:
The plaintiffs [the Talberts] claim that Mrs. Talbert's brother, Merle Offray, gave them a 2003 Yukon Denali. Mr. Offray, who never held a job except as a dishwasher, could not be found to testify to explain how he was able to be so generous. The plaintiffs insured the donated vehicle with State Farm. A year later, they claim that the vehicle was stolen. Interestingly, this was the third time that they have filed a claim for a stolen vehicle. They filed a claim with State Farm which was denied. This lawsuit was then filed.
For all of the reasons argued by State Farm, the Court has dismissed the Talberts' lawsuit. This Court found the testimony of Mr. and Mrs. Talbert to be unworthy of belief.
This appeal followed.

DISCUSSION
On appeal, the Talberts assert the following three assignments of error:
1. The trial court erred in granting defendant's motion for a directed verdict dismissing plaintiffs' claims for arbitrary and capricious conduct and failure to negotiate in good faith.
2. The trial court erred in dismissing the jury after plaintiffs rested and conducting a bench trial during defendant's case.
3. The trial court erred in failing to follow Louisiana law and find plaintiffs had an insurable interest in the stolen vehicle and failure to find any misrepresentation with intent to deceive by plaintiffs in order to void State Farm's obligation under the policy.
We separately address each of these issues.
1. Directed Verdict:
In a jury trial, a party may move for directed verdict at the close of an opponent's evidence. La. C.C.P. art. 1810. The standard of review on appeal of a directed verdict is whether reasonable persons could reach a contrary verdict under the evidence. Thomas v. A.P. Green Industries, Inc., 05-1064, p. 19 (La.App. 4 Cir. 5/31/06), 933 So.2d 843, 858; Davis v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 03-2219, pp. 7-8 (La.App. 4 Cir. 11/17/04), 887 So.2d 722, 727.
As noted, the trial court granted State Farm's motion for directed verdict on the issue of statutory penalties under La. R.S. 22:658 and 22:1220. The prohibited conduct under these two statutes is virtually identical: "the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause." Reed v. State Farm Mutual Automobile Ins. Co., 03-0107, p. 12 (La.10/21/03), 857 So.2d 1012, 1020 (citing Calogero v. Safeway Ins. Co. of Louisiana, 99-1625, p. 7 (La.1/19/00), 753 So.2d 170, 174).[4] Because these two statutes are penal in nature, *1212 they are strictly construed. Reed, 03-0107 at pp. 12-13, 857 So.2d at 1020 (citing Hart v. Allstate Insurance Company, 437 So.2d 823, 827 (La.1983)).
The claimant seeking to recover under these two statutes has the burden of establishing three things: 1) the insurer received a satisfactory proof of loss; 2) the insurer failed to pay the claim within the applicable statutory period; and 3) the insurer's failure to pay was arbitrary and capricious. Boudreaux v. State Farm Mutual Automobile Ins. Co., 04-1339, p. 4 (La.App. 4 Cir. 2/2/05), 896 So.2d 230, 233; Sterling v. U.S. Agencies Casualty Co., 01-2360, p. 6 (La.App. 4 Cir. 5/15/02), 818 So.2d 1053, 1057. When "there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits." Reed, 03-0107 at p. 13, 857 So.2d at 1021 (citing Block v. St. Paul Fire & Marine Ins. Co., 32,306, p. 7 (La.App. 2 Cir. 9/22/99), 742 So.2d 746, 751); Boudreaux, supra. A trial court's determination that an insurer's handling of a claim was not arbitrary, capricious, or without probable cause is a factual finding that may not be disturbed on appeal absent manifest error. Reed, 03-0107 at p. 14, 857 So.2d at 1021 (citing Scott v. Insurance Co. of North America, 485 So.2d 50, 52 (La.1986)).
In this case, State Farm had information that gave it cause to make a reasonable investigation into the title of the vehicle. State Farm's investigation revealed discrepancies as to the title, proof of insurance, and the VIN. Given these findings, which the Talberts were unable to explain, we find no error in the trial court's finding that State Farm was not arbitrary or capricious in handling the Talberts' claim. The trial court thus did not err in granting a directed verdict as to statutory penalties.
2. Bench Trial:
The Talberts contend that because the case began as a jury trial, it was an abuse of discretion for the trial court to dismiss the jury in the middle of the trial. State Farm counters that the trial court was required to dismiss the jury after it granted the motion for directed verdict because the amount in controversy was then reduced to $37,300.00, the value of the vehicle as established by the Talberts' expert. We agree. A jury trial is not available "where no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interests and costs." La. C.C.P. art. 1732(1). The Talberts cite no authority, nor do we find any authority, for the proposition that a trial court cannot dismiss a jury once the amount in controversy is reduced below the jury trial threshold. Accordingly, we find no error in the trial court's decision to dismiss the jury.
3. Material Misrepresentation/Intent to Deceive:
The jurisprudence of Louisiana is clear that an insurer must meet a three-tiered burden of proof in an action for denial of coverage for misrepresentation. First, it must be shown that the applicant's statements were false. Second, the insurer must establish that the misrepresentations were made with an actual intent to deceive. Third, the insurer must establish that these misstatements materially affected the risk assumed by the insurer. Deutschmann v. Rosiere, 02-2002, p. 4 (La.App. 4 Cir.4/9/03), 844 So.2d 1082, 1085. (citing Johnson v. Occidental Life Ins. of Cal., 368 So.2d 1032 (La.1979)).
*1213 The burden of proof on the insurer, as set forth above, is predicated on La. R.S. 22:619, which provides:
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
In this regard, the Louisiana Supreme Court in Cousin v. Page, 372 So.2d 1231, 1233 (La.1979), noted that the insurer has the burden of proving misrepresentation and the intent to deceive, but explained:
The courts of appeal in interpreting a similar provision in R.S. 22:619B have reasoned that strict proof of fraud is not required to show the applicant's intent to deceive, because of the inherent difficulties in proving intent. Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality.
Implicit in the trial court's finding that the Talberts' testimony was "unworthy of belief" is a finding that they made material misrepresentations with the intent to deceive. State Farm contends that finding is supported by the following evidence. First, Mr. Offray, who gave the Talberts the vehicle, was unemployed at the time of the donation and had been unemployed for several years. Second, the Talberts testified that Mr. Offray lived across the street from them with his mother, Mrs. Offray, and denied that he ever lived in Georgia. However, Mr. Offray had a Georgia proof of insurance card and the vehicle he donated to the Talberts had a Georgia temporary license plate. State Farm also cites Mrs. Offray's testimony that she had not seen Mr. Offray for years before the donation and that she was neither told about the donation nor shown the vehicle.
In order for the misrepresentations made by the applicant to be found material, they must have affected the risk assumed by the insurer. La. R.S. 22:619 B; Watson v. Life Insurance Company of Louisiana, 335 So.2d 518, 522 (La.App. 1 Cir.1976). "Material" means that the statement must have been of such a nature that, had it been true, the insurer either would not have contracted or would have contracted only at a higher premium rate. West v. Safeway Insurance Co. of Louisiana, 42,028, p. 7 (La.App. 2 Cir. 3/21/07), 954 So.2d 286, 290. In the present case, it is without question that State Farm would not have insured the Yukon Denali had it known that the documents presented and the assertions made regarding ownership and title were false.
As to whether the representation, or lack thereof, was made with the intent to deceive, it is evident from the attendant circumstances that the Talberts knew the falsity of the representation as to ownership *1214 of the vehicle, and it is reasonable to assume that they recognized the materiality of this representation. The Talberts' assertion that they did not know Mr. Offray did not have clear title to the vehicle is unsupported by the evidence.
It is a well settled principle that an appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Harvey v. Cole, 00-1849 (La.App. 4 Cir. 1/23/02), 808 So.2d 771, 776. Moreover, a trial court's finding regarding an insured's intent to deceive is a factual finding governed by the manifest error standard of review. Holt v. Aetna Casualty & Surety Co., 28,450, 28,451, 28,452 (La.App. 2 Cir. 9/3/96), 680 So.2d 117.
The record in this case fully supports the trial judge's findings of fact and conclusions. After careful review of the record, we cannot say that the trial judge's evaluations of credibility and her factual finding that State Farm met its burden of proving material misrepresentation with the intent to deceive are clearly wrong or manifestly erroneous.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
ARMSTRONG, C.J., concurs.
MURRAY, J., dissents with reasons.
ARMSTRONG, C.J., concurs.
I respectfully concur in the decision to affirm the judgment of the trial court.
MURRAY, J., dissents with reasons.
I respectfully dissent. I cannot agree that the record supports the trial court's determination that the Talbert's made a material misrepresentation with the intent to deceive State Farm. The misrepresentation apparently is that the VIN number on the documentation that Mr. Talbert presented to State Farm when he insured the vehicle could not have been correct as that VIN number later was determined to be on another vehicle.
However, there is no evidence that Mr. Talbert was aware that the information he provided to State Farm was not accurate. All of the documentation that Mr. Talbert had in his possession showed the VIN number that he gave to State Farm. Mr. Offray provided Mr. Talbert with an Ohio title to a white Yukon Denali bearing the VIN number that later proved to be incorrect. There was nothing about the title that would have alerted Mr. Talbert to the fact that the information contained thereon, specifically the VIN number, was not correct. In fact, Mr. Lightfoot, the Assistant Chief of Investigations for the Ohio Bureau of Motor Vehicles, could not opine that the title was invalid. Nether Mr. Fearn nor the employees at the State Farm agency saw anything that caused them to question the validity of Mr. Talbert's documentation of ownership or the accuracy of the VIN number. Apparently, no one checked the VIN number on the white Yukon Denali that Mr. Talbert insured, and for which he paid premiums for over a year before it was stolen.
While it appears that Mr. Offray did not, in fact, purchase the vehicle that he donated to the Talberts, there was no evidence presented that either Mr. or Mrs. Talbert was aware of that fact. The trial court and the majority opine that the Talberts should have questioned Mr. Offray about *1215 how he could have afforded the vehicle he was giving them or why the vehicle had a Georgia temporary tag and why he had a Georgia insurance card. In hindsight, with all the information that has come to light since the donated vehicle was stolen, it would have been prudent of the Talberts to question Mr. Offray. Their failure to do so, however, does not establish that they were aware that the VIN number did not match the vehicle they insured. There is absolutely no evidence that the Talberts did anything other than rely on the Ohio title that Mr. Offray presented.
Because the record does not support the conclusion that the Talberts made a material misrepresentation with the intent to deceive State Farm in obtaining coverage for the vehicle that was donated to them, I would reverse the trial court and find that the Talberts are entitled to recover $37,300, the value of the stolen vehicle at the time of the theft, from State Farm.
NOTES
[1] According to the Talberts, Mr. Offray also spent an additional $3,000.00 installing an alarm system and stereo in the vehicle prior to the donation.
[2] State Farm paid $10,342.45 in rental car costs for the Talberts.
[3] Mrs. Talbert acknowledged that she never told her mother about the donation.
[4] The primary difference between these two statutes is the different time periods allowed for payment  thirty days under La. R.S. 22:658 and sixty days under La. R.S. 22:1220.