844 So.2d 1082 (2003)
Traci I. DEUTSCHMANN
v.
Earl ROSIERE and Louisiana Health Service & Indemnity Company, Inc.
No. 2002-CA-2002.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 2003.
*1083 Richard T. Regan Regan & Post, L.L.P., Metairie, LA, for Plaintiff/Appellee.
John E.W. Baay II, Lynn M. Terrebone, Gieger, Laborde & Laperouse, New Orleans, LA, for Defendant/Appellant, Louisiana Health Services & Indemnity Company.
(Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, and Judge MAX N. TOBIAS Jr.).
JAMES F. McKAY III, Judge.
The defendant, Louisiana Health Services & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana (Blue Cross), appeals a trial court judgment in favor of the plaintiff, Traci L. Deutschmann, which awarded the plaintiff her medical expenses as well as damages for the wrongful cancellation of her insurance policy plus attorney's fees and interest. We affirm.
FACTS AND PROCEDURAL HISTORY
On February 18, 1998, Ms. Deutschmann met with Earl Rosiere to apply for *1084 health insurance with Blue Cross. During this meeting, Mr. Rosiere asked Ms. Deutschmann questions from a standardized form supplied by Blue Cross and recorded her responses. When asked about any female reproductive problems, Ms. Deutschmann informed Ms. Rosiere that she suffered from irregular bleeding and irregular menstrual cycles; she also informed Mr. Rosiere that she was taking birth control pills to remedy the problem. On February 13, 1998, Ms. Deutschmann had consulted Dr. James Seese regarding her female reproductive problems. Dr. Seese diagnosed Ms. Deutschmann with dysmenorrhea and made a note in her chart to consider laparoscopic surgery in the future; however, Dr. Seese did not inform Ms. Deutschmann of this at the time. When asked whether there was "any departure from good health or any medical or surgical advice or treatment from any medical or surgical advice or treatment from any medical practitioner, medical doctor, surgeon, podiatrist, optometrist, chiropractor, dentist, oral surgeon, etc. in the last five years," Ms. Deutschmann responded in the negative. Then Mr. Rosiere finished filling out the application form and Ms. Deutschmann reviewed and signed it.
Ms. Deutschmann continued to have female reproductive problems. Dr. Seese discussed the possibility of surgery with Ms. Deutschmann for the first time on May 19, 1998. On July 9, 1998, Ms. Deutschmann underwent laparoscopic surgery to determine the cause of her problems. As a result of the surgery, Ms. Deutschmann was diagnosed with salpingo-oophoritis, more commonly known as pelvic inflammatory disease. Thereafter, Blue Cross retroactively terminated Ms. Deutschmann's medical coverage by a letter dated August 21,1998.
On June 3, 1999, Ms. Deutschmann filed a petition for declaratory judgment, damages, and mandatory injunction against Blue Cross and Earl Rosiere. A trial on the merits was held on March 4, 2002. The trial court ruled in favor of Ms. Deutschmann and against Blue Cross but dismissed Earl Rosiere from this action. The trial court awarded Ms. Deutschmann $8,668.12 plus the sum of $8,668.12 for wrongful cancellation of plaintiff's health insurance contract in addition to attorney's fees in the amount of $1,000.00 for a total of $18,336.24 together with legal interest and costs. It is from this judgment that Blue Cross appeals.
DISCUSSION
On appeal, Blue Cross raises the following assignments of error: 1) the district court erred when it found that plaintiff's failure to disclose current symptoms noted during a doctor's visit five days before applying for health insurance was insufficient to justify cancellation of coverage; 2) the district court erred when it imputed to Blue Cross the acts of an independent insurance broker representing the plaintiff with no ability to bind the insurer; and 3) the district court erred in awarding penalties and attorneys fees against Blue Cross when Blue Cross discovered current symptoms noted during a doctor's visit five days before the date of the application which had not been disclosed on the application.
It is a well settled principle that an appellate court may not set aside a trial court's finding of fact unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even though the appellate court may feel that its own evaluations and inferences are as reasonable. The manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware *1085 of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Harvey v. Cole, XXXX-XXXX (La.App. 4 Cir. 1/23/02), 808 So.2d 771. Furthermore, the appellate court evaluates the evidence in the record in a light that is supportive of the judgment and most favorable to the appellee. Jeffers v. Hansen, 441 So.2d 283 (La.App. 4 Cir.1983).
The jurisprudence of Louisiana is clear that an insurer must meet a three tiered burden of proof in an action for denial of coverage for misrepresentation. First, it must be shown that the applicant's statements were false. Second, the insurer must establish that the misrepresentations were made with an actual intent to deceive. Third, the insurer must establish that these misstatements materially affected the risk assumed by the insurer. Johnson v. Occidental Life Ins. of Cal., 368 So.2d 1032 (La.1979).
The burden of proof on the insurer, as set forth above, is predicated on La. R.S. 22:619 which provides:
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application of life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
In the instant case, Ms. Deutschmann advised Mr. Rosiere of her excessive and painful menstrual bleeding, her hospitalization in August of 1996 for ovarian cysts, as well as her subsequent treatment with birth control pills. Therefore, Mr. Rosiere completed Ms. Deutschmann's insurance application by answering yes to question number fifteen which indicated that Ms. Deutschmann had "irregular or excessive menstrual bleeding or other female reproductive problems." It was from these same types of problems that Ms. Deutschmann continued to suffer from when she was hospitalized in July of 1998 for an exploratory laparoscopy with a preoperative diagnosis of possible endomitriosis. Both her treating physician, Dr. Seese, and her operating physician, Dr. George, were surprised to find salpingo oophoritis. These facts indicate that Ms. Deutschmann was forthcoming about her female reproductive problems and that both she and her physicians were surprised to find salpingo-oophoritis. Accordingly, we find no error in the trial court's finding that there was no intent to deceive and no material misrepresentation by Ms. Deutschmann.[1]
Blue Cross contends that the trial court erred in holding that it is bound by the actions of an independent agent or *1086 broker who completes application forms furnished by the insurer. This however is not the case. The Louisiana Supreme Court has stated:
A broker who procures insurance which is accepted and issued by an insurance company pursuant to application forms furnished to the broker by the company is considered the agent of the company in the issuance of the policy. 3 Couch on Insurance 2d, Section 26:25 (1960); 16 Appleman on Insurance Law and Practice, Section 8731 (1968). As stated in the latter source, pp. 287-288, "The knowledge of such an agent or his mistake of fact may become that of the insurer."
Tiner v. Aetna Life Ins. Co., 291 So.2d 774, 777-778 (La.1974). Accordingly, the trial court did not err in imputing the actions of Mr. Rosiere to Blue Cross.
Blue Cross contends that the trial court erred in finding that Blue Cross' cancellation of Ms. Deutschmann's policy was arbitrary and capricious and in awarding Ms. Deutschmann penalties and attorney's fees. An insurer has an affirmative duty to verify, through a reasonable investigation, whether a claim was actually excluded from coverage and when an insurer chooses to resist its contractual obligation based upon a supposed defense, which a reasonable investigation would have proved to be without merit, it acts at its peril and renders itself liable for statutory penalties and attorney's fees. Savarino v. Blue Cross and Blue Shield of Louisiana, Inc. 98-0635 (La.App. 1 Cir. 4/1/99), 730 So.2d 1083,1090. In the instant case, Blue Cross cancelled Ms. Deutschmann's policy without contacting Dr. Seese, Dr. George or Mr. Rosiere. Accordingly, we find no error in the trial court's awarding penalties and attorney's fees in this case.
CONCLUSION
For the foregoing reasons, we affirm the trial court's granting of declaratory judgment, its award of general and special damages, and its award of attorney's fees and interest.
AFFIRMED.
TOBIAS, J., concurs and assigns reasons.
TOBIAS, J., concurs and assigns reasons.
I respectfully concur in order to address further why I find the majority to be correct in affirming the trial court's award of attorneys' fees and penalties. A reading of the majority's opinion might cause one to conclude that an insurer, such as the appellant, would have no way to contest whether the insured lied or withheld material information when applying for health insurance coverage without incurring penalties and attorneys' fees. The record in the case at bar discloses otherwise.
The application for insurance [1] completed by Earl Rosiere, the independent insurance broker/agent, and Ms. Deutschmann, the appellee, on 18 February 1998 asked the question of the appellee whether she "HAD IN THE LAST FIVE YEARS ... Irregular or excessive menstrual bleeding or other female reproductive problems." (Emphasis in original.) To that question, the appellee answered "Yes," and provided the following additional explanation: "irregular menstral (sic) cycle 8/96"; she answered other questions related thereto, disclosing that she had been treated by a physician, had a hormone imbalance that caused the condition, that surgery was not recommended or performed, was taking birth control pills for the condition, and *1087 that "no further treatment" was indicated. It appears that the appellant issued the insurance policy to the appellee, effective 15 March 1998, without further investigation.
Thereafter, as reflected by the trial testimony of the appellant's treating physicians, Drs. James Seese[2] and Frank George, following Ms. Deutschmann's treatment and claims for benefits under the policy, the appellant's claims representatives did not contact Dr. Seese or Dr. George prior to denying the claim for benefits. Based upon what they saw prior to the 9 July 1998 laparoscopic procedure on Ms. Deutschmann, neither of these doctors suspected that she had salpingo-oophoritis; that is, the thrust of their testimony was to effect that they thought the appellee merely had dysmenorrhea. A reasonable person would believe that the disclosure made on the application form submitted to the appellant was adequate to place the insurer on notice of her condition; salpingo oophoritis was not suspected or anticipated. In the overall context of this case, the failure to inquire further of the doctors as to when they knew Ms. Deutschmann had salpingo-oophoritis has the appearance of arbitrariness, warranting the imposition of penalties and attorneys' fees.
Prior to issuance of the policy, the appellant could have protected itself by investigating further as to the appellee's precise health by contacting Ms. Deutschmann, obtaining the names of all of her then current physicians,[3] and doing further investigation. The trial court apparently concluded that the appellant did not investigate fully and completely the nature of the appellee's treatment received on 13 February 1998 prior to denying the appellee's claims for benefits under the policy. Rather, they relied upon Dr. Seese's note in his records relating to a second opinion.
The result is therefore not manifestly erroneous or clearly wrong.
NOTES
[1] Although we have found no error in the trial court's factual findings, it is interesting to note that La. R.S. 22:250.12 guarantees availability of individual health insurance coverage to persons such as Ms. Deutschmann who had prior group coverage as well as individuals who had prior individual coverage.
[1] The application is attached to the issued policy.
[2] Dr. Seese was consulted by the appellee to give her a second opinion.
[3] The insurance application attached tothe issued insurance policy does not ask a question whether the proposed insured has seen a physician recently. Rather, the question asked is whether the proposed insured has had "Any departure from good health or any medical or surgical advice or treatment from any medical practitioner (medical doctor/surgeon, podiatrist, optometrist, chiropractor, dentists/oral surgeons, etc.) in the last 5 years." The appellee answered "No" to the question. Read on a literal level and inthe context of the earlier question in the application discussed above, the question is ambiguous and open to multiple interpretations. I find no question asked of the proposed insured to disclose the names and addresses of every health care professional consulted within the recent past (such as the last 5 years) for any medical condition and to disclose the condition for which consultation was sought; such a question is frequently asked in applications for life insurance.