954 So.2d 286 (2007)
Carla WEST, Plaintiff-Appellee
v.
SAFEWAY INSURANCE COMPANY OF LOUISIANA, Defendant-Appellant.
No. 42,028-CA.
Court of Appeal of Louisiana, Second Circuit.
March 21, 2007.
*287 Tracy L. Oakley, for Appellant.
Joey W. Hendrix, Shreveport, for Appellee.
Before BROWN, DREW & SEXTON (Pro Tempore), JJ.
SEXTON, J.
Defendant, Safeway Insurance Company, appeals the trial court's judgment awarding Plaintiff, Carla West, damages, penalties and attorney fees regarding her claim for coverage on the theft of her insured vehicle. For the following reasons, we reverse the judgment of the trial court and render judgment in favor of Defendant.

FACTS
On July 29, 2003, Plaintiff completed an application for an automobile insurance policy to obtain coverage for her 1996 Chrysler Sebring. The application was made at the office of ABC Agency Network, Inc., an agent selling coverage for Safeway Insurance Company of Louisiana. The only operator of the vehicle listed on the application is Plaintiff. A statement directly above the operator section of the application states that the applicant warrants that no other persons of legal driving age reside in the household other than those listed in the application. Further down in the application, the applicant is asked to sign directly below a paragraph entitled APPLICANT'S STATEMENT-READ BEFORE SIGNING, which includes the following language:
The Applicant hereto, states that he/she read this application and attests that all answers given by him/her to the questions asked herein are truthful to the best of his/her knowledge and belief and that said answers were made as inducement to the insurance company to issue a policy . . . Applicant further warrants that no individuals, other than those listed above, regularly operate the vehicle(s) described in this application. It is a special condition of this policy that the policy shall be NULL and VOID and of no benefit or effect whatsoever as to any claim arising thereunder in the event there are material misrepresentations made with an intent to deceive in this application . . .
(Emphasis added.)
On or about January 8, 2004, Plaintiff's vehicle was stolen and vandalized. The vehicle was recovered, but it is undisputed that the amount of damage done to the vehicle made it a total loss. The loss was reported to Defendant by the completion of an Affidavit of Vehicle Theft, which was completed and signed by Plaintiff's sister, Pamela Vasher. Ms. Vasher signed Plaintiff's name on the form. Defendant had the claim investigated by Donald David, an investigator in its special investigation unit, after which Defendant denied the claim on the basis that Plaintiff made material *288 misrepresentations in her application for coverage. Plaintiff filed suit for damages, penalties and attorney fees.
The matter came for trial on March 21, 2006, during which ample testimony was taken from both Plaintiff and Ms. Vasher. On direct examination, Plaintiff testified that, when she went into ABC Agency to apply for insurance, she provided the information to the agent who filled out the application and that she then signed the application. While she claimed at trial that she did not read the paragraph labeled "APPLICANT'S STATEMENT" word for word, she conceded that, during her deposition, she had testified that the statement was read aloud to her by the agent before she affixed her signature. Plaintiff testified that she purchased the vehicle from Long's Auto Sales for $8,500, $3,500 of which was financed. She testified that she had new rims and a car alarm added to the vehicle before it was stolen. Once it was stolen, Plaintiff testified that she made a police report and that her sister called the insurance company to make a claim. She attempted to minimize her sister's use of the vehicle, but failed to give a clear assessment of how often her sister used the car.
On cross-examination, Plaintiff admitted that the address provided on the insurance application was not her residence, but explained that it was the address where she received her mail. She testified that the agent had obtained it from her driver's license, which was issued when she still lived at that address.
Plaintiff was extensively cross-examined on Ms. Vasher's use of the vehicle. While she refused to confirm that Ms. Vasher used the vehicle more than she did, she reluctantly confirmed that she had made such a statement to Defendant's investigator in a sworn statement. Plaintiff also testified that Ms. Vasher assisted her in paying the insurance, maintenance and repairs and in purchasing new rims, tires and a car alarm. She denied that Ms. Vasher paid for any portion of the car itself and only assisted her by delivering payments to Long's Auto Sales.
Plaintiff further testified that Ms. Vasher filled out the Affidavit of Vehicle Theft for the insurance claim, but stated that she had done so with Plaintiff's permission. Plaintiff, however, vacillated on this point when questioned about her earlier statement to Defendant's investigator claiming that she had been unaware that the affidavit had been sent to her or completed by Ms. Vasher.
Ms. Vasher testified that she was the one who found the Chrysler Sebring on the car lot and brought it to her sister's attention, but that the vehicle was bought and paid for by Plaintiff. On cross-examination, however, she was confronted with her earlier sworn statement in which she made the following remark to the investigator regarding the car note, "Well, we still owed Mr. Martin $805, I think." Ms. Vasher evasively refused to confirm either that she made the statement or that the statement was true. She stated that she drove the vehicle occasionally and admitted that she had helped pay for the insurance, maintenance and repairs and helped pay to add the new rims, tires and car alarm. She also stated that she was the one who took the vehicle to have the new rims, tires and car alarm installed. She admitted that she had no driver's license because it had been suspended after her 1999 conviction for a felony.
According to Defendant's claims supervisor, Melissa Fuslier, the claim was denied because Plaintiff gave the wrong address for where the car would be garaged and failed to list her unlicensed sister as a regular operator of the vehicle. Prior to denying the claim, Ms. Fuslier testified *289 that an investigation was conducted by one of its investigators who had taken sworn statements from Plaintiff and Ms. Vasher reflecting that the insured's sister had possession of the vehicle more than 50 percent of the time. She also stated that, because Ms. Vasher is an unlicensed individual, Defendant would never have written the policy if Ms. Vasher had been disclosed as a regular operator of the vehicle. On cross-examination, Ms. Fuslier admitted that the application does not expressly ask where the vehicle was to be garaged.
Donald David testified that he was first assigned to investigate the claim on January 19, 2004. During the course of his investigation, he discovered that, when the vehicle was recovered, it contained numerous papers bearing the name of Pam Vasher, the car dealer who sold the vehicle identified it as "Pam's car," and the claim form on the theft had been completed by Ms. Vasher. Accordingly, he testified that he took the sworn statement of Plaintiff and Ms. Vasher wherein they both admitted that Ms. Vasher used the vehicle approximately 50 percent of the time. These sworn statements of Plaintiff and Ms. Vasher were introduced into evidence without objection. Testimony was also taken as to the value of the car at the time of loss.
At the conclusion of the trial, the court agreed that there were material misrepresentations made, but that the risk for which Plaintiff was currently making a claim, i.e., total loss of the vehicle as a result of theft and vandalism, was unrelated to these misrepresentations. Accordingly, the trial court awarded Plaintiff $4,116 for the loss of her vehicle. Finding that the denial of the claim was arbitrary and capricious, the trial court also awarded Plaintiff $5,000 in penalties and $1,750 in attorney fees. On motion for new trial, the damage award was subsequently amended to $4,160 less the $500 deductible. The instant appeal followed.

DISCUSSION
Defendant argues that the trial court erred in requiring that the material misrepresentations made by Plaintiff be related to the risk of loss due to theft, in finding that Defendant was arbitrary and capricious in its denial of the claim and in awarding attorney fees.
La. R.S. 22:619 provides:
A. Except as provided in Subsection B of this section and R.S. 22:692, and R.S. 22:692.1, no oral or written representation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
In interpreting this statute, this court has held that an insurer must prove that: (1) the insured made a false statement, (2) the false statement was material, and (3) it was made with intent to deceive. Dye v. Walker, 36,482 (La.App.2d Cir.10/23/02), 830 So.2d 429, writ denied, 02-2868 (La. 1/31/03), 836 So.2d 72. The insurer has the burden of proving both misrepresentation and an intent to deceive. Benton v. Shelter Mutual Insurance Company, *290 550 So.2d 832 (La.App. 2d Cir.1989). In articulating the standard of proof for determining whether an insured has the intent to deceive, the supreme court in Johnson v. Occidental Life Insurance Co. of California, 368 So.2d 1032 (La.1979), adopted the following language from the first circuit's opinion in Watson v. Life Ins. Co. of La., 335 So.2d 518 (La.App. 1st Cir.1976):
Strict proof of fraud is not required to show the applicant's intent to deceive, because of the inherent difficulties of proving one's intent. The intent to deceive must be determined from the attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations.
"Material" means that the statement must have been of such a nature that, had it been true, the insurer either would not have contracted or would have contracted only at a higher premium rate. Martin v. Security Indus. Ins. Co., 367 So.2d 420 (La.App. 2d Cir.1979), writ denied, 369 So.2d 1364 (La.1979). Importantly, the jurisprudence requires no causal relation between the misrepresentation and the loss for the insurer to avail itself of this defense. Jamshidi v. Shelter Mut. Ins. Co., 471 So.2d 1141 (La.App. 3d Cir. 1985). In the instant case, the trial court found that any material misrepresentations made by Plaintiff were not causally related to the risk Defendant was being called upon to insure, i.e., the theft of the vehicle, and, therefore, could not operate to void the contract. We conclude that the trial court erred in so finding because such a causal relationship between the misrepresentation and the loss is not required. Jamshidi, supra.
The testimony at trial establishes that, at least, Plaintiff was read the paragraph asking her to attest to the fact that she was the only regular operator of the vehicle, before she signed thereunder. All evidence points to the fact that, at all times pertinent hereto, her unlicensed sister, Ms. Vasher, was also a regular operator of the vehicle. As testified to by Defendant's claims supervisor, Defendant established that it would not have issued insurance if Plaintiff had disclosed Ms. Vasher as a regular operator.
As to whether the representation, or lack thereof, was made with the intent to deceive, the attendant circumstances create a reasonable assumption that Plaintiff recognized the materiality of the misrepresentations. Plaintiff testified that she was aware an unlicensed driver cannot get insurance on a vehicle. Ms. Vasher's uninsurability, her more than frequent use of the vehicle and Plaintiff's and Ms. Vasher's evasive testimony at trial all indicate their knowledge of the consequences regarding Ms. Vasher's owner-like access to the vehicle.
Accordingly, we hold that Plaintiff made misrepresentations with the intent to deceive and that her misrepresentations materially affected the risk assumed by the insurer. Therefore, the insurance policy was void. Borer's Estate v. Louisiana Health Service & Indemnity Co., 398 So.2d 1124 (La.1981); Breaux v. Bene, 95-1004 (La.App. 1st Cir.12/15/1995), 664 So.2d 1377; Jamshidi, supra.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby reversed in its entirety. We render judgment in favor of Defendant and dismiss all of Plaintiff's *291 claims. Costs herein are assessed to Plaintiff, Carla West.
REVERSED AND RENDERED.