975 So.2d 126 (2008)
Glendale Swaingan DEAN
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 2007-CA-0645.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 2008.
Rehearing Denied February 27, 2008.
*128 Allen H. Borne, Ryan P. Reece, Allen H. Borne and Associates, New Orleans, LA, for Plaintiff/Appellant.
Robert H. Cooper, Pelleteri & Wiedorn, Mandeville, LA, for Defendant/Appellee.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, and Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
The plaintiff-Appellant, Glendale Swaingan Dean ("Mrs. Dean"), appeals an adverse judgment dismissing her automobile theft claim against the defendant-appellee, State Farm Mutual Automobile Insurance Company ("State Farm"), on a motion for summary judgment. For the reasons that follow, we reverse the trial court judgment and remand the matter for further proceedings.
I. Background and Procedural History
This case stems from an alleged automobile theft. State Farm issued an automobile policy to Mrs. Dean insuring a 1999 Ford Mustang (hereinafter, "vehicle") for loss by theft. The insured vehicle was reported to the police as stolen on 11 June 2004. Subsequently, Mrs. Dean made a claim for the alleged theft of the automobile under the comprehensive loss provision of her State Farm policy. State *129 Farm denied the theft claim on the basis that Mrs. Dean and her daughter, Dewana Swaingan ("Ms. Swaingan"), made numerous misrepresentations of fact in connection with the claim with the intent to deceive thereby triggering Section 8 of State Farm's policy voiding all coverage for the alleged theft. The vehicle has not been recovered.
Mrs. Dean filed the instant suit against State Farm seeking coverage for the theft of her automobile. Specifically, the suit alleges breach of contract and seeks bad faith penalties for State Farm's alleged arbitrary and capricious failure to pay for the purported loss of the stolen vehicle. State Farm subsequently deposed Mrs. Dean wherein Mrs. Dean admitted to providing false information in both a recorded statement given to a State Farm's Claim Representative, Mitch Falgoust, and in an Affidavit of Vehicle Theft filed with State Farm. The false information pertains to events occurring on the day of the alleged theft and relating to Mrs. Dean's daughter's regular use of the vehicle in the months preceding the loss. Mrs. Dean testified in her deposition that the reason she provided the false information was because she believed that had State Farm known her daughter was the one who drove and parked the vehicle on the morning of its theft and had regularly driven the automobile during the preceding six months, State Farm would deny coverage under the policy for the claimed loss.[1] Despite a provision in the State Farm policy providing coverage for losses occurring while the insured vehicle is in the possession of a permissive user, Mrs. Dean believed that coverage for the loss would attach only if she was the one who drove and parked the automobile immediately preceding and on the day of its theft.
Following the depositions of Mrs. Dean and Ms. Swaingan, State Farm filed a motion for summary judgment urging that (1) the misrepresentations made by Mrs. Dean and her daughter were material and made with the intent to deceive thereby triggering Section 8 of the policy voiding coverage for the alleged theft, and (2) as such, Mrs. Dean was not entitled to bad faith penalties or damages for breach of contract, as a matter of law. On 8 December 2006, at the conclusion of the summary judgment hearing, the trial court granted State Farm's motion dismissing Mrs. Dean's suit, with prejudice, and assigning oral reasons.[2] Judgment was subsequently rendered on 12 February 2007. Thereafter, Mrs. Dean filed a Request for Written Reasons for Judgment, which the trial court issued by on 16 March 2007. In written reasons, the trial court stated:
State Farm alleged that the claimant made false statements throughout the investigation of the claim with the intent to deceive and therefore, coverage is voided, pursuant to Section 8 of the terms of the policy.
The record is replete with documentation of Mrs. Dean's misrepresentations throughout the investigation of her claim. These misrepresentations were not insignificant. Their nature and numerosity trigger Section 8 of the policy and void coverage.[3]
*130 Mrs. Dean timely filed the instant appeal.
II. Law and Analysis
A. Summary Judgment
We review a grant of summary judgment de novo applying the same criteria applied by trial courts to determine if summary judgment is appropriate. Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827 (La.5/22/07), 958 So.2d 634. Summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show no genuine issue of material fact exists and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B.
If the movant will not bear the burden of proof at trial, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court the absence of factual support for one or more elements essential to that claim. La. C.C.P. art. 966C(2). The adverse party must, thereafter, produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. Summary judgment shall be rendered against the adverse party if he fails to set forth facts sufficient to show that a genuine issue for trial exists.
Exceptions to the rule that the failure of an adverse party to file countervailing affidavits will result in a summary judgment exist. The exceptions to the general rule stand for the principle that countervailing affidavits need not be filed by the party opposing summary judgment if the motion for summary judgment has not been properly made. Chrysler Credit Corporation v. Harris, 417 So.2d 1370, 1372-73 (La.App. 4 Cir.1982).[4] For example, in Chaisson v. Domingue, 372 So.2d 1225 (La.1979),[5] where it was undisputed that the teacher-plaintiff had been injured while attending a school band concert, the Supreme Court held that despite the fact that counter-affidavits had not been submitted, summary judgment was not appropriate because it was unclear whether the moving party, her professional liability insurer, was entitled to judgment as a matter of law. Also, in Thompson v. South Central Bell Tel. Co., 411 So.2d 26 (La. 1982),[6] the Supreme Court found that even though South Central Bell was the only party to file affidavits, it was not entitled to summary judgment because there were contradictions on factual issues created by the depositions and the affidavits stated conclusions of law rather than evidentiary facts.
Hence, even if affidavits are unanswered, a motion for summary judgment should not be granted if the moving party is not entitled to it as a matter of law or if the affidavits themselves show a material issue of fact. In the instant case, Mrs. Deans opposition memorandum to State Farms summary judgment motion is not contained in the record on appeal. Additionally, no references to any countervailing affidavits or other controverted *131 evidence submitted by Mrs. Dean are made in the appellate briefs. Because we hold that State Farm is not entitled to judgment as a matter of law, we find the exception to the general rule is applicable.
The issues raised by Mrs. Dean on appeal are twofold: (1) the applicability of a "concealment or fraud clause" in the policy to Mrs. Dean's post-application misrepresentation; and (2) whether or not the misrepresentations made must be material to the loss claimed in order to void coverage under the policy.
B. Intentional Misrepresentations Made Subsequent to an Application for Insurance
We are not persuaded by Mrs. Dean's argument that La. R.S. 22:619A provides the sole remedy for an automobile insurer to void a policy on the basis of material misrepresentations made with the intent to deceive. La. R.S. 22:619A states:
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
Mrs. Dean contends this statute limits ah insurer's right to void coverage under an automobile policy on the basis of material misrepresentations made with the intent to deceive solely to misrepresentations made in the negotiation or in the application for insurance. Mrs. Dean further contends that because State Farm has neither alleged nor shown that she made any misstatements in her application, State Farm cannot void coverage under her policy based on her post-application misrepresentations even though made with the intent to deceive.
Contrary to the plaintiff-appellant's assertions, there is no restrictive language within the statute limiting an insurer's right to void coverage under an automobile policy for material misrepresentations made subsequent to the issuance of a policy or occurring after a loss. We find that La. R.S. 22:619A does not limit the application of the language to misrepresentations occurring in the policy application, but rather limits the instances when an insurance company can void a policy when misrepresentations occur in the application. Moreover, while La. R.S. 22:619A is silent with respect to material misrepresentations occurring subsequent to the issuance of a policy and/or after a loss, State Farm's policy speaks directly to the issue. Specifically, Section 8 of State Farm's policy provides:
CONDITIONS
8. Concealment or Fraud
There is no coverage under this policy if you or any other person insured under this policy has made false statements with the intent to deceive in connection with any claim under this policy.
This provision likewise does not limit an insurer's right to void coverage for false statements only if the false statements were made with the intent to deceive in conjunction with an application of insurance. Section 8 states that it applies to false statements made in connection with the making of any claim under the policy. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts. La. C.C. art.1983; Smith v. Matthews, 611 So.2d 1377 (La. 1993). If the language in a policy is clear, unambiguous and expressive of the intent of the parties, the policy must be enforced as written. La. C.C. arts.1901, 1945-1946; *132 Central Louisiana Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981 (La.1991); LeBlanc v. Davis, 254 La. 439, 223 So.2d 862 (1969).
State Farm's policy also provides that, following a loss, a policyholder must provide a sworn proof of loss and submit to an examination under oath, if requested. If the policyholder could indulge in concealment and misrepresentation in fulfilling these requirements without fear of forfeiting coverage, these requirements would be rendered meaningless. This result is inconsistent with the principle that every provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050; Campbell v. Melton, 01-2578, p. 11 (La.5/14/02), 817 So.2d 69, 78; Lewis v. Hamilton, 94-2204 (La.4/10/95), 652 So.2d 1327; see also La. R.S. 22:654. Further, allowing Louisiana policyholders to engage in misrepresentations during all aspects of their claims except in their policy application is against the public policy of this state.
The clear and unambiguous language of State Farm's policy provides that coverage is voided under the policy when a claimant makes false statements with the intent to deceive in connection with any claim. We do not read this policy to mean, or find that the parties understood it to mean, that misrepresentations made beyond the application would leave the policy in force. The interpretation of an insurance contract that provides the more reasonable and probable intent of the policy will be adopted rather than an interpretation that leads to an absurdity or to a manifest and palpable improbability. Donovan v. Nettles, 327 So.2d 433 (La. App. 4 Cir.1976). See also La. R.S. 22:654. Based on the foregoing, we reject Mrs. Dean's contention that State Farm is precluded from voiding coverage under its policy for misrepresentations made outside of her application and subsequent to the issuance of the automobile policy.
However, the mere fact that we find an insurer can void coverage based on misrepresentations made after the negotiation and purchase of an insurance policy does not end our inquiry in the instant case.
C. Intentional Misrepresentations Immaterial to the Claimed Loss
In her second assignment of error, Mrs. Dean avers the trial court erred by voiding comprehensive coverage under her State Farm policy based on misrepresentations she and/or her daughter made that were arguably immaterial to her claim for automobile theft. Louisiana law requires that in order for an insurer to successfully invoke the material misrepresentation defense to avoid coverage under a policy, the insurer must establish each of the following: (1) the statements made by the insured were false; (2) the misrepresentations were made with the actual intent to deceive; and (3) the misstatements materially affected the risk assumed by the insurer. Cousin v. Page, 372 So.2d 1231, 1233 (La.1979); Talbert, v. State Farm Fire & Cas. Ins. Co., 07-0211 (La. App. 4 Cir. 11/14/07), 971 So.2d 1206. All three elements must be established to support rescission of a policy based on material misrepresentation. Id. Thus, in the case at bar, in order for State Farm to successfully void coverage for Mrs. Dean's theft claim, it must not only show that Mrs. Dean made intentional misrepresentations with the intent to deceive, but also show that the false statements were "material" and affected the risk for which it seeks to void coverage; i.e., the alleged theft of the 1999 vehicle. See Cousin, 372 So.2d at 1233. See also Deutschmann v. Rosiere, 02-2002, p. 4 (La.App. 4 Cir. *133 4/9/03), 844 So.2d 1082, 1085; Johnson v. Occidental Life Ins. of Cal., 368 So.2d 1032 (La.1979).
In the case sub judice, Mrs. Dean admits that both she and her daughter made false statements with the intent to deceive State Farm because she was afraid State Farm would deny coverage under the policy. Mrs. Dean's admission satisfies the first two elements of Louisiana's three-tiered test for rescinding coverage based on a material misrepresentation defense. But has State Farm established as a matter of law that the intentionally deceptive misstatements were "material" and affected the risk assumed by it; i.e., the risk of theft of Mrs. Dean's automobile?
The test to determine the materiality of a misrepresentation made in connection with an insurance application[7] is whether the statement made was of such a nature that, had it been true, the insurer would not have contracted with the insured or would have contracted at a higher rate. Henry v. State Farm Mut. Auto. Ins. Co., 465 So.2d 276 (La.App. 3 Cir. 1985). However, even if the information provided by the applicant is false, if the insurance company would have issued the policy anyway, the misrepresentation is not "material." Davis v. State Farm Mut. Auto. Ins.Co., 415 So.2d 501, 504 (La.App. 1 Cir. 1982). "Materiality" simply embodies the understanding that the misrepresentation concerns a fact that significantly affects the rights and obligations of the insurer. Therefore, if an insurer's rights and obligations are not significantly affected, then the misrepresentations cannot be deemed to satisfy the "materiality" requirement as a matter of law. Id.
Applying these general precepts to misrepresentations made in a post-application context such as in the case at bar, we hold that in order for an insurer to establish that a misrepresentation is "material" so as to avoid coverage for a claimed loss, an insurer must show that had the statements made been true, no coverage would be afforded under the policy. Thus, in the instant case, the test of "materiality" is not as State Farm suggests, i.e., whether Mrs. Dean and Ms. Swaingan's statements were made in connection with Mrs. Dean's claim for the theft of her vehicle. Rather, the proper test in this case is whether State Farm's policy would afford coverage for the theft (i.e. "the risk assumed") regardless of the falsity of statements made by Mrs. Dean and Ms Swaingan.
To ascertain the "materiality" of the intentional misrepresentations made by Mrs. Dean and Ms. Swaingan, we examine each false statement made and then determine whether its truth would preclude or provide State Farm with a defense to coverage under its policy. The record in this case establishes that Mrs. Dean admittedly and intentionally made the following misrepresentations with the intent to deceive State Farm during the claims process and subsequent investigation of the alleged theft of her automobile:
 she last saw the vehicle on the morning of the alleged theft;
 she drove the vehicle to Ms. Swaingan's workplace and parked the car in the parking lot;
 she had two sets of keys to the vehicle and still had both set following the theft;
 after leaving the vehicle parked in her daughter's office parking lot, she locked the vehicle, and then left to go to Lafayette, Louisiana for the funeral of a friend;

*134  she did not give her daughter a set of keys to the vehicle;
 she was the last person who drove the vehicle prior to its being stolen;
 she planned to return to New Orleans that same day to personally retrieve the vehicle;
 she returned to New Orleans that same evening at 5:30;
 she owned only two vehicles  a Granada and the Vehicle; and
 she was the daily operator of the allegedly stolen vehicle.
The record further reveals that Ms. Swaingan also admittedly and intentionally made the following misrepresentations with the intent to deceive State Farm:
 she was driven to work on the morning of the alleged theft by a co-worker;
 her mother drove the vehicle to her work and parked it outside her office at about 9:00 a.m., because she thought it would be safer to park it there than at her home;
 her mother came into her office, left her with a set of keys to the vehicle, and told her it.was locked;
 her mother told her to look after the vehicle and to drive it home after she finished work;, and
 she only drove the vehicle on maybe one occasion prior to the theft.
Later in "the course of State Farm's investigation of the alleged theft and, subsequently in the depositions of Mrs. Dean and Ms. Swaingan, the facts surrounding the misrepresentations were disclosed and the following truths were revealed:
 Mrs. Dean last saw the vehicle on the evening before the alleged theft when Ms. Swaingan drove away in it from her home;
 During the six months preceding the alleged theft, Ms. Swaingan, not Mrs. Dean, was the regular operator of the vehicle, with her mother's permission, and often parked the vehicle at her apartment over night;
 Ms. Swaingan drove the vehicle to her workplace on the morning of the alleged theft with her mother's permission and parked it in the office parking lot;
 There were two sets of keys to the vehicle  Mrs. Dean had one set and Ms. Swaingan had the other;
 Mrs. Dean was on her way to Kansas on the date of the alleged theft and was still driving when she spoke to the New Orleans Police Department to file a report of the theft;
 Mrs. Dean did not intend to return to New Orleans on the date of the theft and did not return that same day; and
 Mrs. Dean owned three cars, not two, including a Lincoln LS she purchased with her husband six months prior to the alleged theft, which was also insured by State Farm, and she rarely drove the vehicle after this purchase.
After reviewing the truth of each intentional misrepresentation, we find that not a single statement made would provide State Farm with a defense to Mrs. Dean's theft claim under the terms and conditions of the policy. In particular, the definition of "Who is an Insured" contained in State Farm's policy specifically includes coverage for a person driving the insured vehicle with the permission of the named insured. At all times pertinent, Ms. Swaingan was driving the vehicle with her mother's permission.[8] This is not disputed. Moreover, the fact that Mrs. Dean and her daughter mistakenly believed there would be no coverage for the theft if State Farm knew Ms. Swaingan  and *135 not Mrs. Deanwas driving the vehicle at the time it was stolen, leading them to engage in terminological inexactitudes about the circumstances leading up to and occurring immediately after the theft, does not make this otherwise mistaken belief somehow true. Nor do we find that the misrepresentations made had any real bearing on the actual theft  the risk insured under the policy  of the vehicle.[9]
Based on the record before us, we find as a matter of law that State Farm has failed to carry its burden of establishing the third element required to sustain a material misrepresentation defense; that is, the misrepresentations, while willful and deceptive, were "material" to the theft  the risk insured by the policy  State Farm should not be allowed to void coverage for the alleged loss.[10] Accordingly, we reverse the trial court's grant of summary judgment and remand the matter for further proceedings.
D. Bad Faith Penalties for Arbitrary and Capricious Failure to Pay
While plaintiff-appellant does not specifically designate bad faith penalties as a *136 separate assignment of error, Mrs. Dean does address this issue in her brief on appeal. Specifically, Mrs. Dean maintains that there remain genuine issues of material fact regarding whether State Farm arbitrarily and capriciously refused to pay her theft claim. Because the trial court granted State Farm's motion for summary judgment voiding coverage for the claim, the issue of bad faith penalties became moot. Accordingly, we pretermit a further discussion of this issue in light of our remand to the trial court.

DECREE
For the foregoing reasons, we reverse the trial court's grant of summary judgment and remand the matter for further proceedings.
REVERSED AND REMANDED.
MURRAY, J., concurs with reasons.
McKAY, J., concurs.
MURRAY, J., concurs with reasons.
Although I agree with the majority's finding that an insurer can void coverage based on misrepresentations made after the negotiation and purchase of an insurance policy, I disagree with the finding that State Farm cannot establish a material misrepresentation defense as a matter of law. Given the procedural posture of this case, I would not preclude State Farm from reurging its policy defense based on the concealment or fraud provision of its policy. For these reasons, I concur in the majority's decision reversing the trial court's grant of summary judgment.
McKAY, J., concurs.
Although I find the misrepresentations and false statements made by the plaintiff and her daughter to be reprehensible, I must concur with the majority that these statements ultimately were not "material" to the theft and therefore should not void coverage for the alleged loss. I also concur with the majority that there was nothing arbitrary or capricious concerning State Farm's handling of this claim.
NOTES
[1] Mrs. Dean's deposition testimony also revealed that the recorded statement given by her daughter to State Farm's Claim Representative, Joe Gallo, likewise contained false and conflicting information concerning the events occurring on the day of the alleged theft, as well as to Ms. Swaingan's use of the vehicle in the months preceding the loss.
[2] A copy of the trial transcript is not part of the appellate record, and thus, not available for this court's review on appeal.
[3] While the trial court's written reasons do not specifically state the misrepresentations made by Mrs. Dean and Ms. Swaingan were "material," we find that its conclusion that the misrepresentations "were not insignificant" is tantamount to a finding that the misrepresentations were "material."
[4] Although we note that Chrysler Credit was decided before substantial amendments to the summary judgment articles of the Code of Civil Procedure, we find that in certain cases the old rules may be applicable in an appropriate case.
[5] Id., note 4.
[6] Id., note 4.
[7] We find no reported Louisiana decision addressing "materiality" in the context of a post-application misrepresentation involving an automobile claim.
[8] While it is true that Mrs. Dean did not contact State Farm to advise that her daughter was operating the vehicle on a regular basis, this is immaterial to a finding that the policy affords coverage for a theft occurring at a time when the vehicle was being driven by someone other than the insured with the insured's permission.
[9] We distinguish the Third Circuit's decision in Jamshidi v. Shelter Mut. Ins.Co., 471 So.2d 1141 (La.App. 3 Cir. 1985), and the Second Circuit's decision in West v. Safeway Ins. Co. of La., 42,028 (La.App. 2 Cir. 3/21/07), 954 So.2d 286, which respectively held that "an insurer need not establish a causal relationship between the material misrepresentation and the loss claimed in order to avail itself of the material misrepresentation defense." We note that in both cases, the courts made a finding that the misrepresentation made were "material." Moreover, the courts were faced with material misrepresentations made with the intent to deceive in conjunction with an insurance application. The issue of "materiality" presented was whether or not the insurer, had the statements been true, either would not have contracted with the insured or would have contracted only at a higher premium rate. Thus, for example, in Jamshidi, even though the material misrepresentations made by the insured regarding his poor driving record were unrelated or "immaterial" to the subsequent loss, i.e., fire and theft of the insured auto, the misrepresentations made in the application were deemed "material" and supported avoidance of the policy because the insurer established that, had it known the truth of the insured's driving record, it would have not have issued him a policy. Jamshidi, 471 So.2d at 1144.

Similarly, in West, the insured failed to list her unlicensed sister as a regular operator of the vehicle sought to be insured in the insurance application. Subsequently, when the car was stolen and vandalized, the insurer denied coverage based on the material misrepresentation defense. The trial court ruled in favor of the insured finding that the misrepresentations made were not causally related to the type of loss that actually occurred. The appellate court reversed citing Jamshidi stating that "the jurisprudence requires no causal relation between the misrepresentation and the loss for the insurer to avail itself of this defense." Specifically, in holding that the insurer was entitled to void coverage for the theft claim, the court determined that, even though the misstatements made in the application were unrelated to the theft claim, the insurer successfully established that it would not have issued the policy had the plaintiff disclosed that an unlicensed driver would be the regular operator of the vehicle. West, 42,028 at p. 7, 954 So.2d at 291.
[10] See Dempsey v. Auto Owners Ins. Co., 717 F.2d 556, 560 (11th Cir.1983)(married man who lied by failing to reveal that he was with another woman on the night of the fire in order to conceal his affair did not misrepresent a "material" fact); Zell v. Federal Ins. Co., 2007 WL 1875803 (W.D.Pa.6/27/07)(insured who lied by failing to disclose that the stolen diamond bracelet was shipped by Federal Express from Pennsylvania to Nevada where she picked it up while vacationing in order to avoid Pennsylvania sales tax did not misrepresent a "material" fact).