MAX N. TOBIAS, JR., Judge.
_JjOn 31 October 2008, the plaintiff/appellant, Stephen B. Murray, [Sr.] d/b/a the Murray Law Firm (“Murray” or “Murray, Sr”), filed suit against the defendants/appellees, Linda S. Harang (“Harang”) and the Law Offices of Linda S. Harang, L.L.C.[1] for breach of a written joint venture agreement to represent clients in connection with property and other damages resulting from the Sewerage & Water Board’s SELA project in the Broadmoor neighborhood of New Orleans [2] (hereinafter referred to as the “Broadmoor Drainage Litigation”). The lawsuit sought recovery of fees paid to Harang which Murray claimed she was not entitled to due to her alleged breach of the written joint venture agreement. On 20 January 2009, Harang filed an answer, reeonventional demand, and request for a jury trial. After substantial discovery, Harang moved for summary judgment on 25 February 2011, shortly before the scheduled trial of the merits. On 28 March 2011, the trial court granted Har-ang’s motion for summary judgment and dismissed Murray’s claims with prejudice. This timely appeal followed.
_bJ.
In 2001, Harang and Murray were jointly retained to represent approximately 350 separate claims for damages in the Broadmoor Drainage Litigation. At the time, Harang worked for the Murray Law Firm (“MLF”) which is owned by Murray. The contract between the MLF and the Broadmoor Drainage Litigation plaintiffs provided for a one-third contingency fee to be paid to the MLF for legal representation in the litigation. Through late 2002 (about one and one-half years), Harang directed the litigation for the MLF and oversaw the work of the MLF support staff on the cases.
In November 2002, Harang separated from her employment at the MLF-where she had worked since 1994. In December 2002, Harang began working at the firm of Harvey, Jacobson, & Glago (“the Harvey Firm”). On 6 January 2003, Harang proposed a written agreement with Murray and the MLF that provided that she and MLF would continue to jointly represent the Broadmoor Drainage Litigation clients; in addition, the agreement set forth the division of responsibility and fees on various other cases. Specifically the agreement stated:
Under Option A, Steve [Murray, Sr.] and I [Harang] would represent these clients jointly, with Justin Woods (MLF) working with me, and under my direction (if he chooses to continue to do so), as he had been doing while I was at the Murray Firm. If Steve and I agree to proceed with Option A, then all labor, *696 expenses, and fees should be divided equally, with each firm having a 50% interest. Justin Woods will be compensated out of Steve’s fees, subject to the terms of Justin’s employment. Suzette Bagneris and I will be compensated out of my fees, subject to our firm’s agreement.
|ROn 17 January 2003, the parties agreed to a contract written by Harang that stated:
You [Murray, Sr.] agree to my proposal called “Option A”, as follows: You and I will continue to represent these “clients” (meaning all original clients, ie. those under contract while I was still at your firm [MLF], and all clients either of us acquire during the course of the litigation) jointly, with Justin Woods of your firm working with me, and under my direction. You will also make additional resources for your firm available to me as the needs of the case dictate.
Harang left her position at the Harvey Firm in July of 2003, and opened her own solo practice, The Law Offices of Linda S. Harang, L.L.C., in August 2003. No change was made to the written agreement, and the only change that came from this move was that Suzette Bagneris was no longer involved in the case.
The trial of the first flight (“the Holzen-thal trial”) of the Broadmoor Drainage Litigation was set to commence on 7 March 2005. Harang notified Murray that she had a previously scheduled lengthy trial (the Agriculture Street litigation) set to begin on 7 January 2005 that might last through 7 March 2005. Harang and Murray agreed that she would join Murray and the MLF in the Holzenthal trial once her other trial was completed. Upon the commencement of the Holzenthal trial on 7 March 2005, Stephen B. Murray, Jr. (“Murray, Jr.”), son of Murray, appeared as trial counsel, with Harang joining him at the trial on 11 March 2005. Ultimately, a favorable judgment was rendered by the trial court on 20 July 2005 that was affirmed on appeal, and an agreement was reached regarding satisfaction of that judgment. Per their written agreement, Murray forwarded Harang 50% of the attorney’s fees in the fall of 2007, amounting to approximately $2.5 million. Harang and Murray continued working on the Broadm-oor Drainage Litigation case, eventually executing a “Memorandum of Understanding” with the|4defendant, Sewerage & Water Board of New Orleans, regarding settlement of the remaining claims.
On 30 June 2008, Murray notified Har-ang that he wanted to modify their original agreement regarding the distribution of attorney’s fees between them that were to be paid in connection with the settlement, asking that a 20% bonus be paid to his son, Murray, Jr., and the rest to split evenly between the MLF and Harang. Harang refused. On 1 April 2009, the parties signed a “memorandum of Understanding” authorizing the Broadmoor Settlement Disbursing Agent to release the attorney’s fees in the form of 50% to the Law Offices of Linda S. Harang, L.L.C., and 50% to the MLF, with each party reserving the right to pursue claims that had been raised against the other in the course of litigation.
II.
We utilize a de novo standard to review a judgment granting a motion for summary judgment. Dean v. State Farm Mut. Auto. Ins. Co., 07-0645, p. 4 (La.App. 4 Cir. 1/16/08), 975 So.2d 126, 130. That is, an appellate court reviews the granting or denial of a motion for summary judgment de novo, using the same criteria applied by a trial court to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, *697 280. We apply La. C.C.P. arts. 966 and 967 to resolve the issues herein relating to Harang’s motion for summary judgment. For the reasons that follow, we affirm the trial court’s judgment dismissing the plaintiff/appellant’s lawsuit.
III.
Murray argues the trial court erred in granting summary judgment because ample evidence existed to create genuine issues of material fact. Specifically, he | -contends that the trial court erred in three ways: (1) sufficient evidence exists to create a question of whether Harang breached the joint venture agreement contract; (2) the trial court erred in its interpretation of the holding in Rice, Steinberg & Stutin, P.A. v. Cummings, Cummings & Dudenhefer, 97-1651 (La.App. 4 Cir. 3/18/98), 716 So.2d 8, and Fox v. Heisler, 08-1964 (La.App. 4 Cir. 5/12/04), 874 So.2d 932; and (3) the trial court failed to follow the holding in Adams v. Med-Force, 96-0386 (La.App. 4 Cir. 10/16/96), 682 So.2d 323.
Murray asserts that Harang did not contribute equally to both expenses and labor while working on the Broadmoor Drainage litigation. He argues that Harang’s involvement with the Broadmoor Drainage Litigation was minimal, and that the MLF was primarily responsible for the case since the MLF conducted all settlement negotiations, drafted all pre-trial pleadings, et cetera. He also claims Harang failed in her responsibilities by not acting as lead attorney at the 7 March 2005 trial. Finally, he argues that Harang contributed around 10% of total funding of the Broadmoor Drainage Litigation, rather than the agreed upon 50%.
The terms of the written agreement between the parties state that “all labor, expenses, and fees should be divided equally.” Murray argues that it was the MLF that provided the majority of the work completed in the Broadmoor Drainage Litigation. Specifically, Murray contends that the MLF took responsibility for managing the case, with Murray, Jr. taking the lead. Harang responds that she never agreed to be the “lead” on the case, but rather to contribute 50% of the labor and represent the clients jointly, with Justin Woods, a lawyer with the MLF, reporting to her. Harang claims that simply because Woods was working with her does not make her lead counsel. In addition, the contract specifically states that | ^additional resources of MLF will be made available “as the needs of the case dictate.”
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. We find that the joint venture agreement is clear and unambiguous.
In regard to expenses, the contract states that each party will contribute 50%. Harang claims that she has never failed to make a contribution for expenses that was asked of her for the contract states that she agreed to pay 50% of the expenses. However, the plaintiffs in the Broadmoor Drainage Litigation have been billed and have paid all of those expenses by virtue of having the costs that were advanced deducted from the proceeds they received. Based on the facts presented, we find no genuine issue of fact exists as to whether Harang paid 50% of the expenses because the matter became partially moot as each Broadmoor Drainage Litigation case was tried; judgments became final and definitive; claims of a plaintiff settled; and monies received. That is, the word “expenses” in the context of the agreement between counsel applies only to court costs (La. R.S. 13:4533). In oral argument, Murray conceded that no expenses for *698 costs are owed any longer. The contract between Murray and Harang is silent as to how the parties were to be reimbursed advanced costs of litigation and obviously they were fully reimbursed. Money was received to pay costs (the accounting for costs was handled by the MLF) as each client’s case was resolved and monies disbursed; both Murray and Harang benefited pro-rata. We do not find such creates a general issue of material fact.
As to labor under the agreement, we again find the contract is clear and unambiguous. The contract specifically states that labor shall be equally shared. 17However, specific duties are not assigned or listed. Murray argues that the MLF was left to complete the majority of the case work, but concedes that “this is not to say that Ms. Harang was no longer involved in the case.” Harang argues that, while she may have completed and performed different tasks than Murray and the MLF, she still contributed 50% of the labor. Murray contends that based on each of the parties’ labor, the fees received should be divided on a quantum meruit basis, citing Adams v. Med-Force, supra.
In Adams, two lawyers entered into an agreement requiring equal participation in expenses and labor on a case, stating that the lawyers would share equally in the contingency fee. Thereafter, one of the lawyers withdrew from representation of the client because he had been elected as a judge and ethically could not continue his representation. We held that the lawyers’ agreement could not be enforced as written and a quantum meruit division of the contingency fee applied because one party could not contribute his share in both expenses and labor, citing Rule 1.5 of the Rules of Professional Conduct.[3]
The case at bar is distinguishable from Adams because Harang continued in her representation of the clients from the beginning to the end of the litigation. The trial court did not err when it chose not to follow Adams.
In her argument, Harang cites to Rice, Steinberg & Stutin, P.A, supra, in support of her position. Murray argues that the trial court erred in following the | ^reasoning in that case. We disagree. In Rice, Steinberg & Stutin, P.A., two law firms entered in a joint venture agreement to jointly represent a client. When it came time to split the contingency fee, one firm claimed that the other firm had not completed 50% of the labor, and therefore should not receive 50% of the fee. We held that while one firm may have done more preparation work than the other, no evidence existed to show that the other firm refused to give assistance when requested. Both firms were responsible to the client, and worked throughout the proceedings.
We find this reasoning applicable to the case at bar. Here, both Harang and Murray (and their employees) contributed to the totality of the work at all stages of the litigation and were responsible to them clients, and were both retained throughout the course of trial. As in Rice, Steinberg & Stutin, P.A, we refuse to examine each party’s specific contribution and weigh them for equality. As we stated:
Louisiana courts have generally refrained from examining professional *699 contracts between attorneys who agree to share legal fees to determine whether one attorney performed more work than the other. In McCann v. Todd, 203 La. 631, 14 So.2d 469 (La.1943), the court held that when one attorney engages another to assist in the representation of a client under a contingency fee contract, they share equally in the fee, and it is immaterial that one attorney may provide more labor or skill than the other. See also, Defrancesch v. Hardin, 510 So.2d 42 (La.App. 1 Cir.) writ denied, 513 So.2d 819 (La.1987); Scurto v. Siegrist, 598 So.2d 507, 510 (La.App. 1 Cir.), writ denied, 600 So.2d 683 (La.1992). In Scurto v. Siegrist, the Court stated as follows:
The agreement between plaintiff and defendant was one confected between two professionals and we will not assume the |9position of dictating to attorneys in a Duer [& Taylor v. Blanchard, Walker, O’Quin & Roberts, 354 So.2d 192 (La.1978) ] situation exactly how much work they need perform to entitle them to a certain fee.
Id. at pp. 8-9, 716 So.2d at 12.
We continued:
Although the record may show that the quantity of work and advancement of costs invested by the Cummings firm outweighs that of the Steinberg firm in this case, this Court is not in a position to perform the role of telling attorneys that they must perform a certain amount of work, or attend a certain number of depositions, or contact the client a certain number of times in order to become entitled to a certain portion of the fee.
Id. at pp. 13-14, 716 So.2d at 14.
Murray argues that this reasoning should not apply since Harang breached the contract. We disagree. While the contract was clear in stating that each party would contribute 50% of the labor, specific duties for each lawyer and/or law firm were not listed or assigned. As with Rice, Steinberg & Stutin, P.A., we find it is not our duty to weigh each lawyer’s contribution to the handling of the cases, and therefore find no breach of the agreement regarding labor responsibilities.[4]
The trial court did not err in granting summary judgment in favor of Harang and against Murray and the MLF as to the even split of the legal fees. We therefore affirm the summary judgment in this regard.
IV.
For the foregoing reasons, we affirm the judgment of the trial court dismissing with prejudice Murray and the Murray Law Firm’s claims against |inHarang and the Law Offices of Linda S. Harang, L.L.C. for a recalculation and different splitting of the legal fees in connection with the Broadmoor Drainage Litigation.
AFFIRMED.
BONIN, J., dissents with reasons.

. Where applicable we also refer to Harang and the Law Offices of Linda S. Harang, L.L.C. collectively as “Harang”

. The project involved repairs to drainage in the area.

. The rule states in pertinent part:
(e) A division of fee between lawyers who are not in the same firm may be made only if:
(1)the client agrees in writing the representation by all of the lawyers involved,
and is advised in writing as to the share of the fee that each lawyer will receive;
(2) the total fee is reasonable; and
(3) each lawyer renders meaningful legal services for the client in the matter.

. Accord, Fox v. Heisler, supra.