| KASTER, LYNCH, FARRAR, & BALL, LLP | * | NO. 2025-CA-0087 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| MEEKS & ASSOCIATES, LLC AND KIM TURLICH-VAUGHAN AS CLERK OF COURT FOR THE PARISH OF PLAQUEMINES | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 67-274, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Paula A. Brown)

Craig L. Kaster
Teresa D. Cop
Nancy A. Richeaux
Kyle Farrar
KASTER & COP, LLC
1215 Independence Blvd., Bldg. 4, Suite B
Zachary, LA 70791

      COUNSEL FOR PLAINTIFF/APPELLEE

S. Daniel Meeks
Kristen E. Meeks
MEEKS & ASSOCIATES, LLC
237 West Causeway Approach
Mandeville, LA 70448

      COUNSEL FOR DEFENDANT/APPELLANT

           **AFFIRMED;
ANSWER TO APPEAL DENIED
AUGUST 08, 2025**

This is a dispute over attorney fees and costs resulting from a breach of contract. Appellant, Meeks & Associates, LLC ("M&A"), appeals the district court's amended judgment, signed on August 16, 2024, which clarified its previous ruling in favor of Appellee, Kaster, Lynch, Farrar & Ball, LLP ("KLFB"), holding that KLFB and M&A had entered into a legally binding contract; awarded KLFB $2,656,786.79 in attorney fees; denied any issues and defenses raised by M&A based on *quantum meruit*; awarded KLFB $24,752.94 in costs,[1] plus accrued interest on the fees and costs; and ordered KLFB to prepare and submit an order for the withdrawal from the registry of the court the attorney fees and costs awarded in the judgment. KLFB has filed an answer to the appeal, which seeks to have this Court modify or amend the district court's judgment to award legal interest, judicial interest, contractual interest and/or accrued interest in favor of KLFB and against M&A, from the date of judicial demand or the date of breach until paid, plus all costs of these proceedings. For the reasons that follow, we affirm the district court's amended judgment and deny KLFB's answer to appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

---

[1] KLFB was awarded $220,000.00 in expenses, subject to two credits in the amounts of $173,270.06 and $21,977.00 that had already been disbursed.

In a previous appeal, this Court laid out the underlying facts giving rise to the matter now before us. "On February 5, 2014, Elwood Breaux, Jr., an employee of the Plaquemines Parish Government (PPG), who worked as an automated garbage truck driver at Solid Waste North, sustained fatal injuries during the course and scope of his employment when he and a co-worker were putting air into a Goodyear G182 RSD tire when a zipper rupture[2] caused the tire to explode." *Breaux v. Goodyear Tire & Rubber Co.*, 20-0477, p. 1 (La. App. 4 Cir. 5/12/21), 320 So.3d 1197, 1201. "Mr. Breaux's surviving spouse, Irene Marie Breaux, individually and on behalf of her minor children, Tabitha Caroline Breaux and Elwood James Breaux, III, Candace Mary Breaux, Brandon Breaux, Ericka Breaux, and James Breaux filed a wrongful death/survival action against the Goodyear Tire and Rubber Company, as the manufacturer of the tire, pursuant to the Louisiana Products Liability Act (LPLA)." *Id.*

M&A, who had previously represented Mr. Breaux in a personal injury lawsuit, agreed to represent Mrs. Breaux and her children on a contingency fee basis to recover for the damages they sustained as a result of Mr. Breaux's injury and death. To memorialize that agreement, in late January 2015 M&A executed five separate contracts—one with Mrs. Breaux, and one with each of her four major children, Candace, Brandon, Ericka and James. Shortly thereafter, M&A filed a petition on behalf of all the Breauxs on February 5, 2015. On the same day, PPG filed a petition to intervene, seeking reimbursement for the previously paid workers' compensation benefits.

---

[2]"A zipper rupture is a circumferential tear of all the components in the sidewall or shoulder area of a radial ply medium or light truck tire. The failure is accompanied by an instantaneous release of stored energy with explosive force analogous to being hit by a truck." *Breaux*, 20-0477, p. 1, n. 1, 320 So.3d at 1201.

Prior to entering into the contingency fee agreements with the Breauxs, M&A attorney Danny Meeks investigated and researched the potential cause or causes of Mr. Breaux's injury and death. He discovered that the probable culprit was a zipper rupture, caused by a defect in the Goodyear tire Mr. Breaux was attempting to inflate. After filing suit, M&A decided to solicit assistance from another law firm in pursuing compensation for the Breauxs' claims. Unable to garner any local interest, M&A eventually contacted KLFB, an out-of-state firm with significant experience and expertise in defective tire litigation. After reviewing the case, KLFB drafted a Co-Counsel Agreement (the "Agreement"), in which it set forth that the firms would split the contingency fee 75% in favor of KLFB and 25% in favor of M&A for "any of the claims arising out of the case of *IRENE BREAUX, et al vs. THE GOODYEAR TIRE AND RUBBER COMPANY, et al*," in the event those claims were "settled or compromised or handled to a final conclusion." The Agreement was executed by Irene Breaux, Danny Meeks and Skip Lynch.[3]

That matter was ultimately tried as a bench trial, beginning on January 14, 2019, and ending on January 25, 2019. After taking the matter under advisement, the district court issued a written judgment on September 10, 2019, which awarded the Breaux plaintiffs a gross total amount of $6,733,935.93.[4] Goodyear appealed

---

[3] Mrs. Breaux and Mr. Meeks executed the Agreement on September 9, 2015. It is unclear from the record when it was executed by Mr. Lynch.

[4] Specifically, the judgment outlined the following awards (*see Breaux*, 20-0477, p. 3, 320 So.3d at 1202):

- $1,533,935.93 to Elwood James Breaux, Jr. ($400,000.00 for conscious mental and physical pain and suffering prior to death, $357,065.84 for past medical expense, $2,268.10 for temporary total disability benefits, $121,71.28 for fatality and funeral benefits, and $652,860.71 for lost wages);

3

that verdict to this Court, wherein we affirmed the district court's judgment in its entirety. *Breaux*, 20-0477, p. 12, 320 So.3d at 1206. Following this Court's affirmation of the judgment, Goodyear applied for a writ of certiorari with the Louisiana Supreme Court, and the Supreme Court denied the application. *Breaux v. Goodyear Tire & Rubber Co.*, 21-00811 (La. 10/5/21), 325 So.3d 363 (Mem). About two weeks later, Goodyear made a total payment of $9,038,455.96; however, because M&A disputed the amount owed to KLFB in attorney fees, M&A filed a motion to deposit the funds into the registry of the court. It was M&A's position that the Agreement pertained only to the damages awarded to Mrs. Breaux, but did not apply to awards made to the Breaux children; KLFB maintained that the Agreement contemplated sharing fees on all of the Breaux plaintiffs' claims. On November 22, 2021, the district court issued an order granting the motion to deposit the funds into the registry of the court. In response,

---

- $1,500,000.00 to Irene Breaux ($500,000.00 for loss of love and affection, and $1,000,000.00 for past and future mental anguish, grief, and anxiety);

- $300,000.00 to Ericka Breaux ($150,000.00 for loss of love and affection, and $150,000.00 for past and future mental anguish, grief and anxiety);

- $300,000.00 to James Breaux ($150,000.00 for loss of love and affection, and $150,000.00 for past and future mental anguish, grief, and anxiety);

- $750,000.00 to Candace Breaux ($150,000.00 for loss of love and affection, $150,000.00 for guidance and nurture, and $450,000.00 for past and future mental anguish, grief, and anxiety);

- $750,000.00 to Brandon Breaux ($150,000.00 for loss of love and affection, $150,000.00 for loss of guidance and nurture, and $450,000.00 for past and future mental anguish, grief, and anxiety);

- $800,000.00 to E.J. Breaux ($200,000.00 for loss of love and affection, $200,000.00 for loss of guidance and nurture, and $400,000.00 for past and future mental anguish, grief, and anxiety); and

- $800,000.00 to Tabitha Breaux ($200,000 for loss of love and affection, $200,000.00 for loss of guidance and nurture, and $400,000.00 for past and future mental anguish, grief, and anxiety).

on March 17, 2022, KLFB filed a petition for damages, alleging that M&A had breached the Agreement.

A three-day bench trial began on January 18, 2024. Several months later, after both parties submitted post-trial memoranda, on April 8, 2024, the district court issued a written judgment and separate reasons for judgment. That judgment: held that the Agreement was a valid contract that applied to all plaintiffs; denied any entitlement of an award based on *quantum meruit*, as asserted by M&A; held that KLFB did not breach the Agreement; awarded KLFB $220,000.00 in court costs;[5] and ordered KLFB to prepare and submit an order to the district court to withdraw their attorney fees and court costs, plus accrued interest from the registry of the court. M&A filed a motion for new trial on April 17, 2024. On July 22, 2024, the district court, on its own motion, re-opened the issue of attorney fees and costs to ensure the accuracy of the decretal language in the judgment. KLFB then filed a request for specific language to be added to the judgment, asking that the judgment set forth the date of breach of contract by M&A to have begun on March 17, 2022—the date KLFB filed its petition. A hearing was held on July 8, 2024, on the motion for new trial. A few weeks later, on August 5, 2024, the district court held another hearing, this time on the issue of attorney fees and costs and ensuring the accuracy of the decretal language to be used in the judgment. Following, on August 16, 2024, the district court granted the motion for new trial in part, but that judgment did not grant any substantive changes.[6] M&A timely filed a devolutive appeal of the August 16, 2024 amended judgment.

_____

[5] See n.1, *supra*.

[6] The judgment granting the motion for new trial related to such housekeeping items as changing the case caption name and clarifying the decretal language the court intended to use in an amended judgment, which judgment it issued on the same day.

## ASSIGNMENTS OF ERROR

M&A offers four assignments of error for our review, which we summarize in this manner:

1. The district court erred when it found that M&A breached the Agreement;

2. The district court erred when it interpreted the Agreement to apply to all plaintiffs;

3. The district court erred when it found that KLFB did not breach the Agreement; and

4. The district court erred by holding M&A liable for litigation expenses under the terms of the Agreement.

We will address each in the order we deem most efficient.

## DISCUSSION

*The Agreement*

M&A raises several arguments against interpreting and applying the Agreement in the manner the district court did, two of which we will address here. First, M&A takes issue with the district court's determination that the language in the Agreement is clear and unambiguous. The relevant provision considered by the district court in its reasons for judgment sets forth:

> If and when any of the claims arising out of the case of *IRENE BREAUX, et al vs. THE GOODYEAR TIRE AND RUBBER COMPANY, et al* shall be settled or compromised or handled to a final conclusion . . .

Before discussing the merits of the first argument, we will first outline the standard of appellate review and the law applicable to contract interpretation.

As this Court has explained, "[t]he interpretation of the language of a contract is a question of law subject to the *de novo* standard of review on appeal, while factual determinations are subject to the manifest error standard of review." *1955 Nola Holdings, L.L.C., v. Windy Hill Pictures L.L.C.*, 23-0050, p. 12 (La.

6

App. 4 Cir. 10/2/23), 376 So.3d 200, 209 (quoting *TKTMJ, Inc. v. Sewerage and Water Bd. of New Orleans*, 20-0154, p. 5 (La. App. 4 Cir. 12/16/20), 366 So.3d 276, 283). "The issue of whether or not the language of a contract is ambiguous is an issue of law subject to the *de novo* standard of review on appeal." *Bodenheimer v. Carrollton Pest Control & Termite Co.*, 17-0595, p. 7 (La. App. 4 Cir. 2/14/18), 317 So.3d 351, 357 (quoting *Fleet Intermodal Servs., LLC v. St. Bernard Port, Harbor & Terminal Dist.*, 10-1485, pp. 5-6 (La. App. 4 Cir. 2/23/11), 60 So.3d 85, 89). "Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of the agreement." *Id.* "However, '[i]n the interpretation of contracts, the [district] court's interpretation of the contract is a finding of fact subject to the manifest error rule.'" *Id.*

"Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown." *Id.*, 17-0595, p. 8, 317 So.3d at 357. "However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply." *Id.* "In such cases, appellate review of questions of law is whether the trial court was legally correct or legally incorrect." *Id.*

"Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the

7

meaning suggested by the contract as a whole." La. C.C. art. 2050. Louisiana Civil Code article 2056 provides, in pertinent part, "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." Furthermore, "[i]n case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation." La. C.C. art. 2057.[7]

"Whether there is a 'plain meaning' to a contract or whether an ambiguity exists is a legal question also subject to *de novo* interpretation." *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996). "[U]nder Louisiana law, a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Bodenheimer*, 17-0595, p. 9, 317 So.3d at 358 (quoting *Lloyds of London*, 101 F.3d at 429). "Parol evidence refers to oral testimony, and documents outside of what is written within a document that is used as evidence to show intent or clarify what is written in the document." *Halpern v. Jonathan Ferrara Gallery*, 19-1066, p. 6 (La. App. 4 Cir. 12/30/20), 365 So.3d 568, 573 (quoting *Black's Law Dictionary* (11th ed. 2019)). "Parol evidence becomes admissible 'to clarify' ambiguity 'and to show the intention of the parties,' when a contractual term is adjudged to be ambiguous." *Sennet v. Boudreaux*, 23-0013, pp. 12-13 (La. App. 4 Cir. 10/5/23), 376 So.3d 254, 262 (quoting *Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087, 1089 (La. 1981)).

M&A construes the disputed provision in the Agreement to mean that "claims" refers only to the claims of Irene Breaux, arguing that because she had

---

[7] "An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." La. C.C. art. 1756.

multiple claims and she was the only one of the Breaux plaintiffs to execute the document, it was exclusively her claims that were contemplated. In contrast, KLFB avers that the phrasing, "any claims arising out of the case of *Irene Breaux, et al vs. The Goodyear Tire and Rubber Company, et al,*" is clear and unambiguous and obviously covers all plaintiffs' claims, stressing that "*et al*" should be read to apply to all plaintiffs versus all defendants. We find that because both interpretations are reasonable under the circumstances, the Agreement is ambiguous. Accordingly, under *de novo* review, we look to extrinsic evidence to clarify this ambiguity. After review of the record, including the parol evidence M&A cites in its brief to this Court,[8] and considering all of the various factors— the skill and expertise of KLFB, the costs invested, the number of hours expended in motions and at trial and the appellate process—we find that to read the Agreement to apply only to the claims of Irene Breaux would yield an absurd consequence.[9] As the district court pointed out, the work performed by KLFB

---

[8] Specifically, M&A offered the following as evidence of the parties' intent:

- KLFB's Petition for Damages: "plaintiff [KLFB] entered into a contract with Meeks to represent Irene Marine Breaux individually and on behalf of her minor children in a lawsuit . . ." KLFB does not assert that the contract at issue included the other four (4) contingency fees.
- KLFB's Discovery: "The memorialized agreement was then forwarded to Mr. Danny Meeks for his approval and signature, as well as the approval and signature of Mrs. Irene Breaux."
- M&A's letter to Irene Breaux dated 11/22/2021: (not to any other member of the Breaux family) claiming KLFB would do everything they could to get Irene (singular) her money from the registry of court. Notably, this is the one and only time KLFB ever attempted to speak to Irene Breaux and [it] never attempted to speak to her again.

[9] At trial, Skip Lynch, a partner at KLFB, testified that he had participated in well over one hundred fifty cases against Firestone, many involving multiple plaintiffs; however, he could not recall an instance in which he had agreed to represent only a single plaintiff. Additionally, Mr. Lynch testified that KLFB would not have advanced nearly $300,000.00 in costs if they were solely representing Irene Breaux.

inured to the benefit of all plaintiffs, not just Irene. This argument is without merit.

Next, M&A insists that to allow KLFB to share in the contingency fee for any plaintiff other than Irene Breaux would be violative of Louisiana Rules of Professional Conduct 1.5(e). That Rule directs:

> A division of fee between lawyers who are not in the same firm may be made only if:
>
> (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive;
>
> (2) the total fee is reasonable; and
>
> (3) each lawyer renders meaningful legal services for the client in the matter.

However, as this Court recently explained in regards to Rule 1.5(e), "[o]ur review of the history surrounding this rule indicates that its spirit is to protect the public from opaque contracts with attorneys who, in turn, farm out their representation to an attorney not contracted by the client." *Spears v. Hall*, 24-0075, pp. 24-25 (La. App. 4 Cir. 1/13/25), ___ So.3d ___, ___, 2025 WL 87976 at *11. That was not the case here. The record reflects that the other Breaux plaintiffs were all at trial and would have been aware that KLFB was performing work on their behalf. Moreover, notwithstanding the 2004 amendment to Rule 1.5,[10] which heightened

---

[10] The previous version of Rule 1.5(e) provided:

> A division of fee between lawyers who are not in the same firm may be made only if:
>
> (1) The division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibilities for the representation;
>
> (2) The client is advised of and does not object to the participation of all the lawyers involved; and

10

requirements for transparency in fee-splitting agreements between lawyers from different firms, we still find our reasoning in *Raspanti v. Litchfield* to be applicable to the instant matter—i.e., that a purported violation of one of the Rules of Professional Conduct cannot be used to abnegate a lawyer's responsibility to pay an earned fee that has been contracted for. 19-0523, p. 14 (La. App. 4 Cir. 2/12/20), 364 So.3d 131, 141. We find alleged Rules of Professional Conduct violations are more properly addressed by the Louisiana Bar Association's Office of Disciplinary Council pursuant to an investigation. *See, e.g., In re Bruzik*, 22-01576 (La. 2/7/23), 354 So.3d 645.

*Breaches of the Agreement*

M&A asserts that the district court erred when it found that M&A breached the Agreement. We disagree. Although KLFB's petition prayed for M&A to be found in breach of the Agreement and asked that they be assessed damages for that breach, the August 16, 2024 amended judgment is silent on both of those issues— there is no specific language finding M&A in breach of the Agreement and no damages for breach of contract were awarded.[11] "Generally, when a trial court judgment is silent as to a claim or demand, it is presumed the relief sought was denied." *Emery*, 24-0018, p. 6, 390 So.3d at 959 (quoting *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 12 (La. 7/1/08), 998 So.2d 16, 26). As a result, that issue is not before this Court; we pretermit any discussion of the arguments

---

(3) The total fee is reasonable.

[11] We note that the district court's reasons for judgment were also silent as to whether M&A breached the Agreement. Nevertheless, "[a]n appellate court reviews judgments, not reasons for judgment." *Emery v. Ben*, 24-0018, p. 5 (La. App. 4 Cir. 5/13/24), 390 So.3d 952, 958. "Furthermore, where there is a conflict between the judgment and the written reasons, the judgment controls." *Id.* (quoting *Reaver v. Degas House, L.L.C.*, 2022-0464, p. 6 (La. App. 4 Cir. 3/13/23), 359 So.3d 570, 575).

made on that subject. Because the district court specifically found that KLFB did not breach the Agreement, we will address that assignment of error.

"[I]n breach of contract cases, 'an appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong.'" *IV Waste, LLC v. Jim Hotard Properties, LLC*, 23-0610, p. 23 (La. App. 4 Cir. 9/17/24), 400 So.3d 1008, 1025 (quoting *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 3, (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1215). "This Court has previously held that [t]he elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages." *IV Waste*, 23-0610, pp. 23-24, 400 So.3d at 1025 (internal quotations omitted) (quoting *Thomas v. Housing La. Now, L.L.C.*, 23-0296, p. 5 (La. App. 4 Cir. 3/21/24), ___So.3d ___, ____, 2024 WL 1208366, at *3). "The burden of proof for establishing a breach of contract is on the party making the claim for the breach and for damages." *IV Waste*, 23-0610, p. 24, 400 So.3d at 1025 (citing *Fleet Intermodal Servs.*, 10-1485, p. 4, 60 So.3d 85, 88).

The district court noted in its reasons for judgment that M&A did not affirmatively plead that KLFB breached the Agreement in its representation of the Breaux plaintiffs at trial; rather, M&A raised it as a defense on two differing bases, asserting that KLFB: (1) abandoned their representation of the Breaux plaintiffs prior to the conclusion of the matter—specifically that KLFB had not meaningfully participated in the appellate process; and (2) minimally contributed to the legal representation of the Breaux plaintiffs. As previously discussed in this opinion, these issues were litigated at a three-day bench trial, at which the district court considered a multitude of exhibits and heard the testimony of six different attorneys—three on behalf of each firm—who participated in the Breaux litigation

12

from its inception through the appellate process. These attorneys each described the level of contribution they had provided in performing such tasks as: researching and writing briefs or other pleadings; taking depositions; questioning witnesses at trial; and assisting with the case on appeal.

After weighing all of this testimony and evidence, the district found that: (1) KLFB did not abandon representation of the Breaux plaintiffs at the appellate phase. The court cited to the testimony of Bruce Dean, an attorney recognized by the Louisiana Bar Association as an appeals specialist, who was hired by KLFB for the purpose of assisting in the appeal. Mr. Dean testified that his primary area of practice consisted of drafting appellate briefs and that he had assisted M&A all the way through the appellate process up until the time this Court issued an opinion favorable to the Breauxs; and (2) jurisprudence from this Court has established that "Louisiana courts have generally refrained from examining professional contracts between attorneys who agree to share legal fees to determine whether one attorney performed more work than the other." *Rice, Steinberg, & Stutin, P.A. v. Cummings, Cummings & Dudenhefer*, 97-1651, p. 9 (La .App. 4 Cir. 3/18/98), 716 So.2d 8, 12. *See also Murray v. Harang*, 12-0384, p. 9 (La. App. 4 Cir. 11/28/12), 104 So.3d 694, 699 (wherein this Court opined that "it is not our duty to weigh each lawyer's contribution to the handling of cases"). Regardless, the district court found that KLFB had contributed significantly to the litigation pursuant to a valid contract between the parties.

"The first two elements of a breach-of-contract claim, obligation and breach, 'involve[ ] issues of both contractual interpretation as a matter of law, as well as questions of fact regarding whether the actions of the parties actually constituted the alleged breach under the applicable contractual terms.'" *IberiaBank v.*

13

*Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (citation omitted). In this assignment of error, M&A does not argue the validity of the contract to this Court, but challenges whether KLFB performed its obligations—which is a question of fact, largely premised on credibility determinations made by the district court. "Louisiana jurisprudence is clear that '[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.'" *Spears*, 24-0075, p. 14, 2025 WL 87976 at *7 (quoting *Braud v. Bernstein*, 23-0332, p. 4 (La. App. 4 Cir. 12/20/23), 381 So.3d 58, 62). "The law is equally clear that when applying the manifest error standard of review . . . an appellate court 'may not simply substitute its own view of the evidence for the [district] court's view, nor may it disturb the [district] court's finding of fact so long as it is reasonable.'" *Spears*, 24-0075, p. 14, 2025 WL 87976 at *7 (quoting *Bartlett Constr. Co., Inc. v. St. Bernard Par. Council*, 99-1186, pp. 4-5 (La. App. 4 Cir. 5/31/00), 763 So.2d 94, 97).

Our review of the record finds that the district court's factual determinations based upon the testimony and the evidence were reasonable. Accordingly, we find the district court's conclusion that KLFB did not breach the Agreement is not clearly wrong. This argument is without merit.

*Litigation Expenses*

In this assignment of error, M&A asserts that the district court created a new contract or altered the existing Agreement to establish an obligation for M&A to reimburse KLFB for its litigation expenses or costs. "We review a [district] court's award of costs under the abuse of discretion standard." *Levine v.*

14

*Nationwide Agribusiness Ins. Co.*, 23-488, 23-489, p. 12 (La. App. 3 Cir. 3/6/24), 381 So.3d 908, 919 (citing *McDaniel v. Carencro Lions Club*, 05-1013 (La. App. 3 Cir. 7/12/06), 934 So.2d 945 *writ denied*, 24-00426 (La. 6/19/2024), 386 So.3d 310 (Mem.)). However, as KLFB points out, at trial the district court specifically questioned Mr. Meeks on this issue:

> THE COURT: I want to make sure that you're not contesting their right as attorneys to get back whatever costs they put out --
>
> THE WITNESS: Oh, yeah --
>
> THE COURT: -- whatever reasonable costs associated with the case?
>
> MS. MEEKS: Right.
>
> THE WITNESS: No, we're not contesting that, Judge.
>
> THE COURT: Okay.

We previously noted that KLFB was awarded $220,000.00 in expenses, subject to two credits in the amounts of $173,270.06 and $21,977.00 that had already been disbursed—leaving the balance it seeks for reimbursement at $24,752.94. M&A did not previously—and has not to this Court—challenge those credits. Now, however, after testifying under oath to the district court that M&A was not contesting KLFB's right to reimbursement for the remainder of its proved expenses, M&A raises the issue for the first time with this Court. It is well settled that "appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed." *Sunset Harbor, L.L.C. v. Bush*, 23-0156, p. 13 (La. App. 4 Cir. 9/26/23), 372 So.3d 855, 863 (quoting *Chaumont v. City of New Orleans*, 20-0017, p. 4 (La. App. 4 Cir. 6/3/20), 302 So.3d 39, 45-46). Accordingly, we find this argument lacks merit.

*Answer to Appeal*

In its answer to appeal, KLFB prays that the district court's judgments and orders be modified or amended, insofar as they failed to award legal interest, judicial interest, contractual interest and/or accrued interest in favor of KLFB and against Meeks, from the date of judicial demand and/or the date of breach until paid, plus all costs of these proceedings. From our review of the record, we see that following the district court's issuance of its first judgment and prior to the issuance of the amended judgment, KLFB filed a *Request for Specific Language Regarding Judicial Interest in Amended Judgment*. The district court then issued its amended judgment, which ordered KLFB to prepare and submit an order to that court for the withdrawal of attorney fees and costs, plus accrued interest, from the registry of the court. Insofar as KLFB's request for interest from the date of judicial demand, we find the district court's judgment was silent as to that date; nevertheless, the district court awarded accrual interest from the time the disputed funds were deposited into the registry of the court.

Again, "when a [district] court judgment is silent as to a claim or demand, it is presumed the relief sought was denied." *Emery*, 24-0018, p. 6, 390 So.3d at 959 (internal quotation marks omitted and citation omitted). Furthermore, this Court has previously explained that "'once a judgment has become final, neither the [district] court nor the appellate court has the power to add interest to it.'" *Vekic v. Popich*, 18-0426, p. 4 (La. App. 4 Cir. 11/14/18), 259 So.3d 445, 448 (citing *Wheelahan v. Wheelahan*, 00-1330, p. 3 (La. App. 4 Cir. 10/10/01), 811 So.2d 26, 28. As a result, we find that the district court's amended judgment was clear, and, therefore, KLFB's request for interest from the date of judicial demand is denied.

**DECREE**

16

For the foregoing reasons, we affirm the district court's August 16, 2024 judgment, and deny KLFB's answer to this appeal.

**AFFIRMED;**
**ANSWER TO APPEAL DENIED**